615 A.2d 771

Ken JOHNSON, Appellee,

v.

Jane HARRIS; the Sunbury Eagles; the Milton Eagles; the Milton Legion Home Association; and Ken Aikey and Delores Aikey, Jointly and Individually and t/d/b/a The Halfway House.

Appeal of Jane HARRIS.

Ken JOHNSON, Appellant,

v.

Jane HARRIS; the Sunbury Eagles; the Milton Eagles; the Milton Legion Home Association; and Ken Aikey and Delores Aikey, Jointly and Individually and t/d/b/a The Halfway House.

Superior Court of Pennsylvania.

Submitted June 29, 1992.

Filed Nov. 5, 1992.

542

John P. Pietrovito, Williamsport, for Jane Harris.

Richard J. Callahan, Williamsport, for Ken Johnson.

Robert A. Seiferth, Williamsport, for the Sunbury Eagles.

R. Michael Kaar, Milton, for the Milton Eagles.

Christopher J. Foust, Milton, for the Milton Legion Home Assoc.

Henry W. Mitchell, Williamsport, for Ken & Dolores Aikey.

Before CAVANAUGH, OLSZEWSKI and MONTGOMERY, JJ.

CAVANAUGH, Judge.

This is an appeal from a December 23, 1991 order granting summary judgment to the appellees, several establishments which allegedly sold the appellants alcoholic beverages prior to their involvement in a one-vehicle accident. The lower court determined, based on the record properly before it, that no trial worthy issue of material fact existed as to whether the driver of the accident vehicle, Jane Harris, had been served alcohol by the appellees while visibly intoxicated. The Court accordingly found that the appellees could not be found liable under the Pennsylvania Dram Shop Act, 47 Pa.S.A. § 4–493(1), which subjects a purveyor of alcoholic beverages to liability for the injuries caused by persons served while visibly intoxicated. After reviewing the parties' briefs and the record, we are constrained to agree that summary judgment was appropriately granted in this case. We affirm.

The relevant facts and procedural history are as follows. This case arises out of a one-vehicle accident which occurred at approximately 9:40 p.m. on December 21, 1988. Appellant Jane Harris ("Harris") was the driver of the vehicle, and appellant Ken Johnson ("Johnson") was her passenger. Johnson sustained serious injuries in the accident. Harris and Johnson are friends, who prior to the accident, had, on occasion, frequented several different local drinking establishments together. Subsequent to the accident, Johnson commenced a civil action against Harris and various dispensers which had allegedly sold them alcoholic beverages that day, appellees the Sunbury Eagles, the Milton Eagles, the Milton Legion Home Association and Ken Aikey and Delores Aikey, jointly and individually and t/d/b/a The Halfway House. Johnson alleged that the appellees violated the Dram Shop Act, 47 Pa.S.A. § 4-101 et seq., by serving Harris alcohol while she was "visibly intoxicated."

There was evidence that at approximately noon on December 21, 1988, Harris drove to Johnson's mother's house, where Johnson lives, and picked him up. They traveled to the Chestnut Street Inn, where they both had approximately three (3) 12-ounce bottles of Genny Lite beer. Both appellants recalled that there was a bartender and several customers in the Inn, although they do not remember their names. At approximately 1:00 p.m., Harris and Johnson walked to the nearby Sunbury Eagles, where there was a female bartender and a few patrons. Johnson recognized the bartender and several of the patrons, although he did not know their names. At the Sunbury Eagles, they consumed several 16 ounce Genny Lite beers, although their testimony differs as to how many beers. Johnson believes they each had about six (6) to eight (8) beers, while Harris recalls that together they shared three (3) beers, with her consuming one (1). After watching a movie, Harris drove Johnson to another club, the Milton Eagles. Harris stated that the bar was full of people when they left it. Johnson did not notice anything peculiar about her or her driving at that time.

Both Johnson and Harris' memory is hazy in relation to what occurred subsequently. Johnson remembers being at the Milton Eagles, but does not recall what he did there. He remembers later being at the Milton American Legion, where he gambled and drank beer. Although initially stating he did not remember whether he went to The Halfway House, he later vaguely recalled stopping there. He distinctly remembers that it was his impression that Harris was *not* intoxicated the night of the accident. Harris recalls being at the Milton Eagles and the Milton American Legion, and having Genny Lite beer at both. She does not remember how much she drank at each place, nor whether she went to The Halfway House that night. She recalls leaving the Milton American Legion sometime after six o'clock.

An affidavit submitted by a bartender at The Halfway House, Delores Aikey, indicates that Johnson and Harris came into the bar at approximately 7:45 p.m. The affidavit states that neither appellant was served alcoholic beverages, and that after Johnson used the bathroom, both left the bar. All parties agree that the accident happened at approximately 9:40 p.m.

This lawsuit originated by a writ of summons filed by Johnson and sent to Harris and the appellees on March 16, 1989. On May 17, 1989, Johnson filed interrogatories and requests for production. On September 16, 1990, Johnson filed his Complaint, which was subsequently answered by the appellees. The appellees filed for summary judgment in June, July and August of 1991. In their motions, all the appellees referred to the deposition testimony of Johnson and Harris as failing to indicate any evidence that Harris was served alcohol while she was visibly intoxicated. Johnson responded on November 26, 1990, by filing the affidavit of Donald K. Weaver, M.D.

The lower court granted appellees' motions on December 23, 1991. In ruling on the summary judgment motions, the court noted that the only evidence Johnson produced that indicated Harris was visibly intoxicated was an affidavit compiled by Donald K. Weaver, M.D. In pertinent part, it states:

"In reference to ... [this] ... matter, I have reviewed the following documents:

1. The police report;

2. The toxicology report as well as copies of lab tests of Jane Harris from the Geisinger Medical Center from her hospitalization which began December 21, 1988. The report indicates a blood level at .226;

3. A copy of the transcript of deposition of Jane Harris taken November 1, 1989;

4. A copy of the deposition of Ken Johnson taken January 30, 1990.

After reviewing the above documents, I have had the following observations:

1. It is probable that the blood alcohol concentration of Jane Harris was 0.226 or higher at the time of the accident and was close to this level at the Halfway House and when she left the Legion in Milton;

2. At the other end of the day, Ms. Harris' blood alcohol concentration would have been around 0.07 when she began drinking at the Sunbury Eagles.

Ms. Harris' blood alcohol concentration would have exceeded 0.10% during the time when she was drinking at the Sunbury Eagles and probably would have exceeded 0.15 by the time they left the Sunbury Eagles.

Ms. Harris' blood alcohol concentration would have been about 0.15% or greater while drinking at the Eagles in Milton and subsequently at the Legion in Milton.

Based on my experience, a person with a blood alcohol content of 0.10% or greater has the following visible signes [sic] of intoxication:

A. A decreased capacity for hearing resulting in a person usually speaking louder;

B. Decreased dexterity typically resulting in sudden awkward movements;

C. Motor skills diminished;

D. A person's reaction time is compromised.

> The aforementioned visible signes [sic] of intoxication becomes more pronounced as a person's blood alcohol concentration is 0.15% or greater. In addition, a person's speech is typically slurred, awkward movements are more pronounced and sometimes bloodshot eyes are clearly visible."

The Court declared that in defining a violation of the Dram Shop Act as the dispensation of alcoholic beverages to a person "visibly intoxicated," the Act stresses what can be seen. *See Laukemann v. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board,* 82 Pa.Cmwlth. 502, 475 A.2d 955, 956 (1984). It ruled that Dr. Weaver's foregoing affidavit, which is based on generalized conclusions about the effects of alcohol on the average person, and not his personal observations of Harris on the day of the accident, was insufficient to create a genuine issue of fact. The court emphasized, moreover, that Johnson testified at his deposition that Harris did not appear visibly intoxicated on the day of the accident. It also stated that Johnson failed to respond to any of the appellees' interrogatories requesting the names of any witnesses who observed Harris being served alcohol while visibly intoxicated. The court additionally based its ruling on the fact that at oral argument Johnson admitted to having no witnesses who would testify that Harris was visibly intoxicated on the day of the accident.

A motion for summary judgment may be properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). *See also Liles v. Balmer,* 389 Pa.Super. 451, 453, 567 A.2d 691, 692 (1989); *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa.Super. 420, 423, 576 A.2d 72, 73 (1990); *Craddock v. Gross,* 350 Pa.Super. 575, 577–8, 504 A.2d 1300, 1301 (1986). The ultimate inquiry in deciding a motion for summary judgment is whether the admissible evidence in the record, considered in the light most favorable to the respondent to the motion, fails to establish a prima facie

case. *Liles, supra,* 389 Pa.Super. at 454, 567 A.2d at 692. When a motion for summary judgment is made and supported as provided in Rule 1035, the non-moving party may not rest on the averments made in his pleading. *Liles, supra,* 389 Pa.Super. at 453, 567 A.2d at 692; *Alberici v. Tinari,* 374 Pa.Super. 20, 22, 542 A.2d 127, 127–8 (1988); *Community Med. Services v. Local 2665, Etc.,* 292 Pa.Super. 238, 244–5, 437 A.2d 23, 26–7 (1981). Rather, it is his responsibility to show that a genuine issue of fact exists by affidavit or otherwise. *Liles, supra,* 389 Pa.Super. at 453–4, 567 A.2d at 692; *Alberici, supra,* 374 Pa.Super. at 22, 542 A.2d at 128; *Community Med. Services, supra,* 292 Pa.Super. at 244–5, 437 A.2d at 26–7. Summary judgment may be entered only in cases that are clear and free from doubt. *McDonald v. Marriott Corp.,* 388 Pa.Super. 121, 124, 564 A.2d 1296, 1297 (1989). Moreover, the court's function in summary judgment proceedings is not to determine the facts, but only to determine if a genuine issue of fact exists. *Id.,* 388 Pa.Super. at 124, 564 A.2d at 1297, 1298 (1989). "[A]n order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion." *Id.,* 388 Pa.Super. at 125, 564 A.2d at 1298; *accord Ackler v. Raymark Indus., Inc.,* 380 Pa.Super. 183, 185–6, 551 A.2d 291, 292 (1988).

 The Pennsylvania Dram Shop Act contains two pertinent provisions:

### § 4–493 Unlawful Act relative to liquor, malt and brewed beverages

\* \* \* \* \* \*

(1) It shall be unlawful for any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated ...

\* \* \* \* \* \*

### § 4–497 Liability of licensee

No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by

customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent, servant or employee when the said customer was visibly intoxicated.

47 P.S. §§ 4–493(1) & 4–497. A violation of this statute is deemed negligence *per se,* and if the violation is the proximate cause of the plaintiff's injuries, then the defendant is held liable. *Majors v. Brodhead Motel,* 416 Pa. 265, 268, 205 A.2d 873, 875 (1965); *McDonald, supra,* 388 Pa.Super. at 125, 564 A.2d at 1298; *Couts v. Ghion,* 281 Pa.Super. 135, 140, 421 A.2d 1184, 1187 (1980) (lead opinion by Hoffman, J.). Thus, in order for an injured plaintiff to recover, the following two things must be proven: (1) that the plaintiff was served alcoholic beverages by a licensee while visibly intoxicated and (2) that this violation of the statute proximately caused the injuries. *McDonald, supra,* 388 Pa.Super. at 125, 564 A.2d at 1298.

■ Johnson asserts there is a genuine issue of fact as to Harris being served while she was visibly intoxicated for the following reasons. First, his deposition and Harris' deposition establishes that Harris was served alcoholic beverages at each of the aforementioned taverns. Second, Dr. Weaver's affidavit outlines the typically visible signs of intoxication of a persons in relation to their level of blood alcohol concentration, and indicates that the average person would have displayed visible signs of intoxication given Harris' speculated blood alcohol concentration at all places. Third, in his "Motion to Reconsider," Johnson submitted an affidavit sworn to by his attorney to the effect that Delores Aikey, a bartender at The Halfway House, could testify that Harris and Johnson were visibly intoxicated when they entered The Halfway House.

Harris makes similar arguments in support of her position, which are as follows.[1] First, she notes that her deposition testimony and Johnson's indicate that both consumed a significant amount of alcohol on December 21, 1988, between 12:30

---

1. We note the seeming incongruity between appellant Harris' deposition testimony that she was not intoxicated and her claim before us that she was "visibly intoxicated."

p.m. and 9:40 p.m.. Second, she notes that a blood alcohol test given one hour after the accident showed she had a blood alcohol content of 0.226. Third, similar to Johnson, she relies on Dr. Weaver's affidavit. She avers the evidence in this case equals or exceeds the circumstantial evidence in *Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980), and recommends for our consideration *Liles v. Balmer*, 389 Pa.Super. 451, 567 A.2d 691 (1989).

We agree in the main with the lower courts' analysis, and find instructive our sister court's pronouncements in *Laukemann, supra*, as to the proper meaning of "visibly intoxicated:"

[I]n defining the violation as the dispensation of alcoholic beverages to a person "visibly intoxicated," the statute displays considerable logic in placing stress upon what can be seen. The law does not hold a licensee or its agent responsible on any basis, such as blood alcohol level of a patron, which would not be externally apparent; instead, the law decrees that the alcoholic beverage dispenser shall not provide more alcohol when the signs of intoxication are visible. *The practical effect of the law is to insist that the licensee be governed by appearances, rather than by medical diagnoses.*

*Id.,* 82 Pa.Cmwlth. at 506, 475 A.2d at 956–57 (emphasis supplied). *Accord McDonald, supra*, 388 Pa.Super. at 127, 564 A.2d at 1298 (summary judgment properly granted where there was insufficient evidence to go to a jury that plaintiff was visibly intoxicated when served alcoholic beverages). A review of the Record displays that there is nothing to indicate that Harris was served while visibly intoxicated at any of the drinking establishments. Quite the contrary is true. Johnson asserted in his deposition testimony that Harris was not visibly intoxicated the day of the accident. Harris' deposition testimony avers that she believed she did not display any signs of visible intoxication. Johnson failed to answer any of the appellees' interrogatories requesting the names of witnesses to Harris' visible intoxication, and at oral argument admit-

ted to having no witnesses who would testify to Harris' visible intoxication.

Dr. Weaver's affidavit is not sufficient to create a genuine issue of fact in light of the foregoing. The affidavit attempts to "relate back," based on a blood-alcohol level of 0.226 and the depositions of Harris and Johnson, the *probable* alcohol concentration of Harris at various establishments before the accident, and indicate at those points the visible signs of intoxication that the *average* person would have. The Pennsylvania Supreme Court has on various occasions discussed the complexity of "relation back" testimony, and has indicated that it should be used guardedly. *Commonwealth v. Gonzales,* 519 Pa. 116, 546 A.2d 26 (1988); *see also, Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992); *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992). We are accordingly wary of an attempt to create a genuine issue of fact as to "visible intoxication" based on medical testimony of what the *average person's* reaction might have been *assuming Harris' "probable" blood alcohol concentration.*[2] There is no indication that Harris' reaction to alcohol ingestion correlates with the average person's. Moreover, Johnson, the complaining party, asserted that Harris did not appear to be intoxicated at any time on the day of the accident. Given that appellants admitted inability at oral argument to produce even one witness to support their position, summary judgment was properly granted.

We believe that the value of Dr. Weaver's affidavit is even less given that appellants are unable to contest that Harris wasn't served in The Halfway House. Delores Aikey in her affidavit relates that appellants came into The Halfway House at 7:40 p.m. and left without being served a drink after Johnson used the bathroom. The appellants have not placed in issue that they were even served alcohol by The Halfway House, much less were served while visibly intoxicated. Dr. Weaver's affidavit makes no assertion that Harris was served at that establishment; Harris' deposition indicates she does

**2.** Although we base our ruling on other grounds, we note that the appellants ambiguity as to what drinking establishments they visited and as to how much Harris had to drink at these establishments seriously calls into question the weight that should be afforded Dr. Weaver's affidavit.

not even remember going to The Halfway House; and Johnson only vaguely remembers being there. Thus, Dr. Weaver's observations only have relevance to drinking establishments the appellants visited before The Halfway House. Given the dubious nature of "relation back" testimony, this makes his assumptions even more tenuous.

We do not find analogous the cases appellant Harris commends to our attention, *Couts v. Ghion,* 281 Pa.Super. 135, 421 A.2d 1184 (1980) and *Liles v. Balmer,* 389 Pa.Super. 451, 567 A.2d 691 (1989).

In *Couts,* we considered, in the context of a compulsory non-suit, whether it was necessary to have direct eyewitness evidence that a person was visibly intoxicated before a dram shop could be held liable under 47 P.S. § 4–493(1). In that case, a patron of a drinking establishment had a motor vehicle accident after excessive alcohol intake. Although the patron did not produce anyone who observed his visible intoxication before the accident, there were several substantial pieces of circumstantial evidence that indicated he was served in that condition. This circumstantial evidence included the arresting officer's testimony that after the accident the patron appeared quite visibly intoxicated. Other circumstantial evidence included testimony which established that the appellant consumed a substantial amount of alcohol while at a drinking establishment; that he had driven erratically without using his car's headlights at night after leaving that establishment; and that his blood alcohol content was tested as 0.12 *three hours* after the accident. *Id.,* 281 Pa.Super. at 142, 421 A.2d at 1188. In a plurality decision,[3] we declared that this was sufficient

---

3. Of the three judge panel in *Couts,* one judge wrote the plurality, one judge dissented and one judge concurred in the result. An opinion offered by one member of a three-member panel, with the remaining two judges either dissenting or concurring in the result, is of no precedential value. *Commonwealth v. Hurst,* 367 Pa.Super. 214, 221, 532 A.2d 865, 869 (1987); *Askew by Askew v. Zeller,* 361 Pa.Super. 35, 39–40, 521 A.2d 459, 462 (1987). Accordingly, we note for the appellant Harris' benefit that *Couts* has no precedential value.

We feel that it is in the best spirit of our Rules of Professional Responsibility for an advocate to clearly label a plurality decision, either by proper citational form or by otherwise appropriately inform-

circumstantial evidence to go to a jury. *Id.* We do not find that Dr. Weaver's rather speculative affidavit, which contradicts the appellant's deposition testimony, is analogous to the strong circumstantial evidence of visible intoxication in *Couts.*

Appellant Harris relies on *Liles, supra,* for the proposition that for summary judgment to be appropriately granted, the appellees must submit an affidavit or a stipulation that Johnson will not be able to produce evidence at trial to support his contentions. We do not read *Liles* to contradict long-standing summary judgment practice. In *Liles,* the plaintiff fell off a moped and suffered amnesia after being allegedly chased in front of the defendant's house by defendant's dog. Because of her amnesia, appellant could not remember any details concerning the accident. The defendant denied that her dog had ever left the back yard, and moved for summary judgment. This court denied the motion. We noted that a police report had indicated that the fall had taken place because "[a] dog ran out of the yard towards [Mrs. Liles]." *Id.,* 389 Pa.Super. at 455, 567 A.2d at 692. We also noted that the hospital report likewise supported the plaintiff's version. *Id.* Given the police and hospital reports, we found that the plaintiff very well might be able to support the averments of her complaint at trial. *Id.* We felt that, given these reports, the party moving for summary judgment had not shown that the plaintiff could not prove her averments at trial. We commented, however, that our ruling might have been different if the defendant had submitted affidavits or a stipulation that indeed displayed there was no genuine issue of fact. *Id.,* 389 Pa.Super. at 456–7, 567 A.2d at 693. Thus, *Liles* is inapposite, in that the appellees presently have submitted evidence in their motion for summary judgment indicating, through the appellant's own words, that no genuine

ing us in some other way of its nonbinding status. *See Rules of Professional Responsibility,* 42 Pa.C.S.A., EC 7–22 & 7–23. Candor to the tribunal would seem to require nothing less, as it is of the utmost importance for a correct disposition that the court not be misled about the precedential nature of a decision. Parenthetically, we note that on at least one occasion, a panel of this court treated *Couts v. Ghion* as authority. *See Speicher v. Reda,* 290 Pa.Super. 168, 172, 434 A.2d 183, 185 (1981) (*Couts v. Ghion* deemed, without comment or analysis of its plurality status, as "very much in point").

issue of fact exists concerning Harris' being served while visibly intoxicated.[4]

Before concluding, we address Johnson's contention that the lower court erred in refusing to review his "Motion to Reconsider." After the lower court granted summary judgment, Johnson filed this motion. Attached to it was an affidavit, sworn to by his counsel, Richard J. Callahan, which indicates that Delores Aikey could testify that the appellants were visibly intoxicated when they came into The Halfway House.[5] Johnson maintains that the lower court "totally ignored" this Motion, which he feels creates a genuine issue of fact. The lower court did not err by failing to consider Johnson's "Motion to Reconsider."

Johnson has not pointed us to any provisions for a "Motion for Reconsideration" in our Rules of Civil Procedure

4. Appellant Harris' reading of *Liles* would eviscerate summary judgment practice as has been heretofore practiced in this Commonwealth. It would place the burden on the party moving for summary judgment to produce, in addition to evidence showing a genuine issue of fact is nonexistent, evidence which shows that the non-moving party *could not possibly rebut* the moving party's showing. Simply put, the tenor of the appellant Harris' argument is that summary judgment is not appropriately granted until the moving party shows that there is no possible evidence from which the appellant could prove their case at trial.

We emphatically reject this view. Summary judgment is an adversarial proceeding. Once the moving party produces evidence showing no genuine issue of fact exists, the non-moving party cannot rest on its averments. *Liles, supra,* 389 Pa.Super. at 453, 567 A.2d at 692; *Alberici v. Tinari, supra,* 374 Pa.Super. at 22, 542 A.2d at 127–8; *Community Med. Services, supra,* 292 Pa.Super. at 244–5, 437 A.2d at 26–7. It is the responsibility of the non-moving party, by affidavit or otherwise, to show a genuine issue of fact exists. *Liles, supra,* 389 Pa.Super. at 453, 567 A.2d at 692; *Alberici v. Tinari, supra,* 374 Pa.Super. at 22, 542 A.2d at 127–8; *Community Med. Services, supra,* 292 Pa.Super. at 244–5, 437 A.2d at 26–7. To accept the appellant's argument would negate any responsibility on the non-movant's part to frame genuine issues for trial.

5. The affidavit states that on February 16, 1989, attorney Callahan spoke with Mrs. Aikey, who told him that the appellants came into The Halfway House intoxicated and that she refused to serve them. It also relates a conversation on or around January 13, 1992, between attorney Callahan and Mrs. Aikey's attorney which allegedly indicates that she could testify that Harris was visibly intoxicated when she entered The Halfway House.

applicable to Orders Granting or Denying Motions for Summary Judgment. Such a motion would appear not to exist, as an order rendering summary judgment is final and immediately appealable. *Reifinger v. Holiday Inns, Inc.,* 315 Pa.Super. 147, 151, 461 A.2d 839, 841 (1983); *Lane v. Schacht,* 260 Pa.Super. 68, 74, 393 A.2d 1015, 1018 (1978); *Husak v. Berkel,* 234 Pa.Super. 452, 455 n. 1, 341 A.2d 174, 175 n. 1 (1975).

■ Assuming that such a Motion (applicable after a Summary Judgment Order) exists, we do not believe that such a motion can be allowed to submit testimonial evidence that could have been submitted before the summary judgment order was issued. According to attorney Callahan's affidavit, Callahan had knowledge on February 16, 1989, that Mrs. Aikey had apparently witnessed Harris come into The Halfway House visibly intoxicated. This was long before Johnson was served with appellees' Motions for Summary Judgment and the lower court's ruling. Thus, there exists a clear lack of diligence in pursuing competent evidence from Mrs. Aikey. We find analogous our rule that additional evidence submitted by a party after trial may only warrant a new trial in limited circumstances, namely, where (1) the evidence was discovered after the trial; (2) the evidence must be such that it could not have been obtained at the trial by reasonable diligence; and (3) the evidence must be such as would likely compel a different result. *Ebner v. Ewiak,* 335 Pa.Super. 372, 380, 484 A.2d 180, 184–5 (1984); *R & S Millwork, Inc. v. Commonwealth, Department of Transportation,* 42 Pa.Cmwlth. 624, 828, 401 A.2d 587, 589 (1979). To allow a party to submit evidence that could have been attained with reasonable diligence before the court's ruling would eviscerate the summary judgment rule. Such a practice encourages deleterious discovery, wastes judicial resources in revisiting the same issues, and discourages parties from treating summary judgment with the gravity it deserves.[6]

6. The only observations by Mrs. Aikey that are properly of record are contained in her affidavit of July 22, 1991, which was attached to The Halfway House's Motion for Summary Judgment. As noted *supra,* this affidavit *does not state* that Mrs. Aikey observed Harris to be visibly intoxicated when the appellants entered The Halfway House. Mrs.

■ In any event, even if we could consider the Callahan affidavit, it provides no clearer picture as to whether appellant Harris was visibly intoxicated while served alcohol at any of the aforementioned drinking establishments. The Callahan affidavit does not contradict Delores Aikey's prior statement that appellant Harris was not served alcohol at The Halfway House. The affidavit also fails to show that the appellants were visually observed being served while intoxicated at the other establishments. The affidavit merely suggests that appellant Harris may have appeared to be intoxicated at The Halfway House which, given the vague and contradictory testimony of the appellants, provides no indication of her visible intoxication at any of the establishments during earlier hours.

The legal task is not to determine whether, if the appellant's counsel had been more vigorous during discovery, a genuine issue of fact might have been found to exist in this matter. Rather, the courts are constrained to examine the record to determine the existence of a genuine issue of fact. We find that the record fails to show that there is a genuine issue of fact that Harris was served by any of the appellees while visibly intoxicated, and we conclude that summary judgment was appropriately granted.

Order affirmed.

Aikey avers in the affidavit that Johnson and an unidentified woman came into The Halfway House at approximately 7:45 p.m., Johnson used the men's room and both left without consuming any alcoholic beverages.