652 A.2d 372

William J. CONNER and Kathleen Conner, H/W, Appellants,

v.

Walter A. DUFFY, Nilon Bros. Enterprises, and City of Philadelphia, and the Phillies.

Superior Court of Pennsylvania.

Argued June 30, 1994.

Filed Dec. 30, 1994.

278

Michael I. McDermott, Philadelphia, for appellants.

Garland D. Cherry, Sr., Media, for Nilon Bros. and City of Philadelphia, appellees.

William G. Adamson, Philadelphia, for the Phillies, appellee.

Before BECK, HUDOCK and HESTER, JJ.

BECK, Judge:

In this case we decide, *inter alia,* whether appellants raised a genuine issue of material fact as to "visible intoxication." Appellants allege error in the trial court's grant of summary judgment to appellees. We affirm.

William Conner (Conner) was injured when a car driven by Walter Duffy (Duffy) collided with the motorcycle Conner was riding. Duffy, along with several friends, was returning home from a baseball game at Veteran's Stadium in Philadelphia when the accident occurred. When police arrived at the scene, Duffy was taken into custody and charged with Driving Under the Influence (DUI). Conner later brought this negligence suit against Nilon Brothers Enterprises (Nilon Bros.), the concessionaire at the Stadium, and the Philadelphia Phillies baseball team (the Phillies) for serving Duffy while he was visibly intoxicated in violation of the Pennsylvania Liquor Code.[1] After discovery, Nilon Bros. and the Phillies moved for summary judgment which was granted by the trial court. Conner filed this timely appeal.

Our standard of review is clear. Summary judgment is properly granted only when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b).

---

1. Originally, the City of Philadelphia was named as a defendant in the suit along with Nilon Bros. The City was subsequently dropped and the Phillies were added.

Conner's suit was based primarily on the following section of the Pennsylvania Liquor Code, known as the Dram Shop Act:

It shall be unlawful—

for any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

47 Pa.S.A. § 4-493(1).

In order for an injured plaintiff to recover for a violation of § 4-493, he must prove that: 1) the tortfeasor was served alcoholic beverages while visibly intoxicated; and 2) this violation of the statute proximately caused his injuries. *McDonald v. Marriott Corp.*, 388 Pa.Super. 121, 125, 564 A.2d 1296, 1298 (1989). The trial judge found that Conner could not establish that Duffy was served alcoholic beverages by Nilon Bros. or the Phillies while visibly intoxicated.[2] Conner claims this finding is erroneous and that the record amply supports his claim of Duffy's visible intoxication while at the stadium.

A preliminary issue regarding the evidence presented at summary judgment concerns the admissibility of various statements offered by Conner as proof of Duffy's visible intoxication. Specifically, Conner offered the statements of two of Duffy's companions, Charles MacDonald and Gary Moyer, and the written "mental impressions" of Nilon Bros.'s

2. The Phillies organization was made a party to this suit through the involvement of its employees at the ballpark, the Phillies Usherettes. The Usherettes worked a seating area known as the Field Boxes which Duffy and his companions occupied on the day of the accident. Field Box patrons would pay an Usherette for a beer and the Usherette would go to the concession stand to retrieve it. The cost of the beer was the same whether purchased through an Usherette or at the concession stand, though Usherettes would sometimes receive tips from the patrons they served.

private investigator, Mark Muth. Mr. Muth interviewed Mac-Donald and Moyer and wrote a report recording his "impressions" of the interviews. MacDonald also gave two other statements regarding the events in question. The trial judge found that this evidence could not be considered in the motion for summary judgment because the statements were unverified, "not admissions, or the result of depositions and [did] not fall within the category of affidavit."

Conner argues that the statements were incorporated into Nilon Bros.'s answers to interrogatories and, therefore, must be considered as part of the record on summary judgment as the statements were "adopted" by Nilon Bros. Both parties rely on *Wilkerson v. Allied Van Lines*, 360 Pa.Super. 523, 521 A.2d 25 (1987), *appeal dismissed*, 518 Pa. 61, 540 A.2d 268, *cert. denied*, 488 U.S. 827, 109 S.Ct. 78, 102 L.Ed.2d 54 (1988), for support.[3] Our review of the holding in *Wilkerson* and the answers to interrogatories cited by Conner lead us to conclude that the references made by Nilon Bros. to the documents they produced for discovery do not constitute an adoption or admission on the part of Nilon Bros. The evidence, therefore, was properly excluded by the trial court as inappropriate for review on summary judgment.[4]

Conner argues however, that even if the unverified statements are excluded, there remains ample evidence of visible intoxication to allow the case to proceed to trial. The evidence cited by Conner includes Moyer's deposition testimo-

---

**3.** In *Wilkerson*, a panel of this court stated that, as a general rule, a party who answers an interrogatory requesting factual data by referring to a document it produces typically is estopped from denying admission of the document. However, the *Wilkerson* court held that where a party supplies only the name of an intended expert (who later is not used) and a copy of his report, such does not constitute an admission of the expert's opinion.

**4.** Conner's argument that he had no idea that the absence of verifications of the statements was an issue is also meritless. Clearly it is the responsibility of a litigant to insure that all evidence relied upon in responding to a motion for summary judgment be in an appropriate form for consideration by the court. Conner's claim that the problem could have been solved easily with additional discovery only supports the trial court's finding that it was Conner who erred in failing to present admissible evidence to support his claim.

ny that beer purchases were made at the stadium and that Duffy drove erratically upon exiting the stadium, the police report detailing the drunken state in which Duffy appeared to the arresting officer approximately one hour after the baseball game (slurred speech and bloodshot eyes), the results of the field sobriety and blood alcohol tests performed at the scene of the accident and at the hospital, and the "relation back" testimony by Conner's expert who opined that based on the blood alcohol test results, Duffy would have appeared intoxicated during the time he was at the stadium.

Beginning with Moyer's deposition testimony, we encounter some difficulty concluding that Moyer's statements support, rather than contradict, Conner's arguments. Moyer plainly testified that Duffy did not appear intoxicated while at the stadium. As far as erratic driving is concerned, Moyer testified that Duffy was unfamiliar with the roads and so missed an initial turn to enter Interstate 95. As a result, the group had to travel on local roads longer than planned before reaching the highway. Moyer stated that he was never concerned about Duffy's driving and at no time did Duffy appear incapable of controlling the vehicle. With respect to beer purchases, Moyer simply could not testify to ever seeing Duffy purchase beer from either a concession stand or an Usherette, but suspected that at some point he had.[5] Moyer could only say that he and his five companions alternately purchased beer for any of those in the group who wanted a beer at that particular time. The nexus between beer purchases by Duffy and his visible intoxication was never established. Indeed, the only certain testimony Moyer gave on this issue was that Duffy did not appear intoxicated while at the stadium.

Conner's proof of Duffy's visible intoxication therefore depends on the other evidence set out above, namely, Duffy's appearance at the time of his arrest, his blood alcohol level and the expert's relation back testimony. Conner insists that

5. While it was never addressed by the trial judge, we find compelling appellees' argument that Conner failed to offer evidence that Duffy had been served alcoholic beverages at all by either Nilon Bros. or the Phillies.

this evidence is sufficient under our holdings in *Couts v. Ghion,* 281 Pa.Super. 135, 421 A.2d 1184 (1980) and *Speicher v. Reda,* 290 Pa.Super. 168, 434 A.2d 183 (1981). In *Couts,* the panel was confronted with the question of whether direct eyewitness evidence of visible intoxication was necessary for a civil suit based on a violation of the Dram Shop Act. The evidence in *Couts* consisted of the arresting officer's testimony regarding the driver's visible intoxication at the time of the accident, evidence that the driver consumed a great amount of alcohol while at the bar in question, evidence that the driver drove erratically and without headlights upon leaving the bar, as well as evidence that the driver's blood alcohol level was 0.12 three hours after the accident.

The *Couts* court, in an opinion in which one judge dissented and another concurred in the result, found that this evidence was sufficient to allow the issue of visible intoxication to go to the jury. We are, of course, not bound by the plurality decision in *Couts.* Further, we find significant differences from the instant facts and those in *Couts,* including the lack of erratic driving, the difference in the elapsed time between the blood alcohol testing and the accident, and the fact that there is testimony by Moyer that he and Duffy consumed more beer in the car after leaving the stadium while on their way home.[6]

We further find that Conner's case cannot rise to the level of establishing a genuine issue of material fact simply through the "relation back" testimony of the expert. In *Johnson v. Harris,* 419 Pa.Super. 541, 615 A.2d 771 (1992), a panel of this court warned:

The Pennsylvania Supreme Court has on various occasions discussed the complexity of "relation back" testimony and has indicated that it should be used guardedly. We are accordingly wary of an attempt to create a genuine issue of fact as to "visible intoxication" based on medical testimony of what the average person's reaction might have been

---

6. *Speicher,* which held under facts similar to *Couts* that a compulsory nonsuit should not have been granted, relied primarily on *Couts* without reference to its plurality status.

assuming [the driver's] "probable" blood alcohol concentration.

*Id.* at 552, 615 A.2d at 776 (citations omitted). We agree with the trial court that Conner failed to establish a genuine issue of material fact as to visible intoxication.

Conner offered another theory of liability in addition to the violation of § 4–493. He claimed that the parties also violated § 4–492(15) of the Liquor Code, which prohibits malt or brewed beverage licensees from knowingly selling any malt or brewed beverages to any person engaged in the business of illegally selling liquor or malt or brewed beverages. Conner reasons that by allowing Usherettes to retrieve beer for patrons in the Field Boxes, Nilon Bros. knowingly sold the beer to the Phillies employees who then illegally sold the beer to the patrons.

Putting aside for a moment the fact that such a claim would apply only to Nilon Bros. since the Phillies organization is not a licensee, and the fact that Nilon Bros. claims § 4–492 does not apply to it since it is a "stadium licensee" (as defined by § 4–408) and not a brewed or malt beverage licensee, we reject this theory of relief. The agreement between Nilon Bros. and the Phillies to allow Usherettes to retrieve beer for Field Box patrons simply does not constitute "knowing sales to persons engaged in illegal liquor sales." Although the trial court rejected this theory on other grounds,[7] we affirm its order based on those discussed above.

Order granting summary judgment in favor of appellees affirmed.

---

7. The trial court found that non-licensees who furnish alcohol to an adult who later injures a third party cannot be held liable under the "consumption rule" set out in *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983). In his brief Conner argues that the "for-profit service by the Phillies is far different from the circumstances of *Klein.*" We decline to address this aspect of the issue as we find the underlying basis for Conner's theory of recovery, i.e., that Nilon Bros. was selling beer to the Phillies Usherettes who were then illegally selling the beer, meritless.