462

662 A.2d 16

**Bernard Wyn HILES, as Personal Representative
and Administrator of the Estate of Connie
Elaine Hiles, Deceased, Appellant,**

v.

**The BRANDYWINE CLUB, the Continental Room, Inc.,
t/a the Brandywine Club and William J. Diviney.**

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed July 20, 1995.

Richard I.G. Jones, Kennett Square, for appellant.

L. Rostaing Tharaud, Philadelphia, for appellees.

Before CIRILLO, JOHNSON and SAYLOR, JJ.

CIRILLO, Judge:

Bernard Hiles, as personal representative and administrator of the estate of his wife, Connie Hiles, appeals from the judgment entered in the Court of Common Pleas of Chester County. We affirm.

Hiles filed two separate wrongful death and survival actions, which were consolidated, seeking to recover damages for the death of his wife in an automobile crash involving William J. Diviney, an intoxicated driver who fell asleep at the wheel and struck the vehicle operated by Connie Hiles.[1] Hiles instituted

1. Diviney is not participating in this appeal.

the actions against Diviney and Appellee, The Brandywine Club, an after hours drinking establishment at which Diviney consumed several bottles of beer prior to the accident.

A jury trial ensued, and the following evidence was revealed. Diviney arrived at Pulsations, a night club, at approximately 11:00 p.m. on November 29, 1985, the evening before the accident. While there, Diviney drank a gin and tonic and one or two bottles of beer. Diviney left Pulsations at about 12:45 a.m. and went to The Brandywine Club (Brandywine). By virtue of its club/catering license, Brandywine was permitted to remain open and serve food for as many hours as it saw fit; however, it was only permitted to serve alcohol until 3:00 a.m. *See* 47 P.S. §§ 4–406 & 4–493(16). The club manager, James Montisano, testified that he often stayed open past 3:00 a.m. and, when a band had been hired to play at the club, frequently served alcohol after 3:00 a.m.

Diviney arrived at Brandywine at approximately 1:00 a.m. and was served alcohol until approximately 4:00 a.m. While at Brandywine, Diviney consumed from five to seven bottles of beer. Diviney was unable to recall exhibiting signs of visible intoxication, nor did Hiles introduce any eyewitness testimony indicating that Diviney was visibly intoxicated. Diviney left Brandywine, stopped for breakfast, and drove toward his home in Toughkenamon, Pennsylvania. The accident occurred at approximately 6:30 a.m. on November 30, 1985, when Diviney's vehicle crossed the center line and struck Connie Hiles' vehicle head-on. Diviney subsequently pled guilty to driving under the influence of alcohol and homicide by vehicle.

Following trial, the jury rendered a verdict finding Diviney 100% liable and awarded Hiles $925,000.00 ($338,000.00 for the wrongful death claim and $587,000.00 for the survival claim). The jury determined that Brandywine was not liable because Hiles failed to prove that Diviney was visibly intoxicated when he was served there.[2]

**2.** Following the verdict, the trial court, in a rather unusual request, asked the jury to render an alternative or "advisory" verdict based upon the points for charge originally submitted by Hiles. The court asked the jury to assume that Pennsylvania law allowed liability to be

Judgment was entered solely against Diviney. Hiles filed post-trial motions asserting that the jury should have been instructed that if Brandywine served liquor after the hours permitted by its license, such conduct was negligence *per se* in violation of the Liquor Code, 47 P.S. § 4–493(16). Hiles also averred that the trial court erred in instructing the jury that, pursuant to section 4–497 of the Liquor Code, Brandywine was liable to third persons injured by a Brandywine customer only when Brandywine serves liquor to a visibly intoxicated customer. Post-trial motions were denied, and this appeal followed.

Hiles raises the following issues for our consideration:

(1) Whether when Hiles established at trial that Brandywine, by its illegal "after-hours" service of alcohol violated 47 P.S. § 4–493(16), and was guilty of negligence *per se*, and when Hiles further established to the satisfaction of the jury that such violation was a proximate cause of Diviney's intoxication, which was also a proximate cause of the accident, is Brandywine then precluded by its own legal conduct from asserting an immunity under 47 P.S. § 4–497?

(2) Whether the trial court erred when it erroneously instructed the jury concerning Hiles' burden of proof on the issue of "visibly intoxicated?"

Initially, we set forth the following pertinent provisions of the Liquor Code:

**§ 4–493 Unlawful Act relative to liquor, malt and brewed beverages**

* * * * * *

**It shall be unlawful—**

imposed against Brandywine if it had served Diviney after 3:00 a.m., the time at which its license required it to stop serving liquor, and whether such service was a substantial factor in causing the accident in question. The jury determined that, assuming the law was written in the manner posited, Brandywine served Diviney after 3:00 a.m., and such service was a substantial factor in causing the accident. The jury, in rendering an "alternative verdict," found Brandywine 40% liable, and Diviney 60% liable. As we find no basis for the submission of the second set of jury instructions/interrogatories, we shall disregard this "advisory" verdict.

(1) For any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages to be sold, furnished or given, to any person *visibly intoxicated....*

\* \* \* \* \* \*

(16) For any licensee, his servants, agents or employes, to give, furnish, trade, barter, serve or deliver any liquor or malt or brewed beverages to any person during hours or on days when the licensee is prohibited by this act from selling liquor or malt or brewed beverages.

\* \* \* \* \* \*

### § 4–497 Liability of licensee

No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee *unless* the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent, servant or employee when the said customer was visibly intoxicated.

47 P.S. §§ 4–493(1), (16) & 4–497 (emphasis added).

By way of history, our modern Liquor Code (47 P.S. §§ 1–101—9–902), enacted in 1951, replaced the Act of May 8, 1854, which made it a misdemeanor to furnish intoxicating drinks to an intoxicated person, and also provided a civil remedy for injuries to persons resulting from the furnishing of alcoholic beverages in violation of "any existing law." *See* Act of May 8, 1854, P.L. 663, No. 648, §§ 1 & 3. The Liquor Code, while incorporating the misdemeanor provision of the former Act, did not adopt the civil liability provision.

Nonetheless, in *Schelin v. Goldberg,* 188 Pa.Super. 341, 146 A.2d 648 (1958), seven years after the enactment of the Liquor Code, this court imposed civil liability on a licensee for a violation of section 4–493(1) of the Liquor Code. *See* 47 P.S. 4–493(1), *supra.* There, a visibly intoxicated bar patron became an annoyance to the other customers in the bar. Eventually, he got into an argument with one of the customers, who eventually struck the visibly intoxicated patron from behind,

injuring him. The plaintiff based his theory of liability on the fact that the bartender served him alcoholic beverages while he was visibly intoxicated in violation of section 4–493(1) of the Liquor Code. Although the civil liability provision of the 1954 Act had been repealed, this court held that "[w]hen an act embodying in express terms a principle of law is repealed by the legislature, then the principle of law as it existed at common law is still in force." *Id.* at 346, 146 A.2d at 651. The court applied the Restatement of the Law of Torts § 286 (Violations Creating Civil Liability), and allowed plaintiff recovery under a common law theory. Negligence was established by the violation of section 4–493(1) and, since the jury determined that the negligence was the proximate cause of the plaintiff's injury, liability was imposed on the licensee.

The evolution of licensee liability continued with the addition of 47 P.S. § 4–497 in 1965 (reenacted in 1987), which specifically limits the liability of licensees to third parties injured by a licensee's customer. *See* 47 P.S. § 4–497, *supra.* With the exception of cases involving minors, discussed *infra,* section 4–497 shields liquor licensees from liability to third persons, unless the customer invoking the injury exhibits signs of visible intoxication at the time he/she is served.

Since enactment of the Liquor Code, both section 4–493(1) and section 4–497 have been used to impose (or limit) civil liability on licensees. *See Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965) (a violation of section 4–493(1) is negligence *per se* and, where the violation is a proximate cause of plaintiff's injury, defendant licensee is liable for such injury); *Conner v. Duffy,* 438 Pa.Super. 277, 652 A.2d 372 (1994) (in order for an injured plaintiff to recover for a violation of section 4–493(1), he must prove that (1) the tortfeasor was served alcoholic beverages while visibly intoxicated and (2) this violation proximately caused his injuries); *Johnson v. Harris,* 419 Pa.Super. 541, 615 A.2d 771 (1992) (same, citing both 4–493 and 4–497); *McDonald v. Marriott Corp.,* 388 Pa.Super. 121, 564 A.2d 1296 (1989) (same); *Peluso v. Walter,* 334 Pa.Super. 609, 483 A.2d 905 (1984) (in order to sustain an action against a tavern owner, plaintiff must demonstrate that

the owners served liquor to a customer when he was visibly intoxicated pursuant to section 4–497 of the Liquor Code); *Couts v. Ghion,* 281 Pa.Super. 135, 421 A.2d 1184 (1980) (a violation of section 4–493(1) is negligence *per se* and, where the violation is a proximate cause of plaintiff's injury, defendant licensee is liable for such injury).[3]

It stands to reason that the dispenser of alcoholic beverages shall not provide more alcohol when the signs of intoxication become visible; this law's practical effect is to insist that the licensee be governed by appearances, as opposed to medical diagnoses. *Johnson,* 419 Pa.Super. at 551, 615 A.2d at 776; *McDonald,* 388 Pa.Super. at 127, 564 A.2d at 1298. The legislature, in imposing this restriction, undoubtedly sought to hold licensees liable only where a customer's actions predictably contributed to the plaintiff's injuries.

Since its enactment, section 4–493(1), one of twenty-eight unlawful acts enumerated in section 4–493 of the Liquor Code, is the only enumerated unlawful act which has been used as a basis for imposing liability on licensees for injury to a licensee's customer or to a third person, and then only when the violation is a proximate cause of the injuries. The Liquor Code provides its own sanctions for violations of the enumerated unlawful acts included in section 4–493. *See* 47 P.S. §§ 4–471 & 4–494 (Penalties). Included in this itemization of unlawful acts is section 4–493(16) (furnishing liquor at unlawful hours). *See* 4–493(16), *supra.* While violators of section 4–493(16) have received penalties pursuant to sections 4–471 and 4–493 (*i.e.,* fines), we know of no Pennsylvania authority

3. Interestingly, even after the enactment of 4–497, relating solely to the liability for injuries to *third persons,* this court has continued, in some cases, to use section *4–493(1)* as the sole and/or partial basis for liability in cases involving injuries to third persons. *See e.g. Conner, supra; Johnson, supra; Couts, supra.* Given its history, it comes as no surprise that section 4–493(1) provides a basis for liability where the visibly intoxicated customer is *herself/himself* the injured party seeking recovery, *see e.g. McDonald, supra; Majors, supra; Schelin, supra.* It is perplexing, however, that with the existence of section 4–497, section 4–493(1) continues to be cited as a basis for liability in cases involving injuries to third persons.

which imposes liability on a licensee for a violation of section 4–493(16).

Keeping in mind the development of the Liquor Code and ensuing case law, we turn to the facts of the instant case. A review of the record reveals nothing to indicate that Diviney was served while visibly intoxicated during his hours at Brandywine. Diviney's own testimony was that he could not recall exhibiting signs of visible intoxication, nor did Hiles introduce any eyewitness testimony indicating that Diviney was visibly intoxicated. The jury, therefore, had every reason to conclude that Brandywine did not serve Diviney when he was visibly intoxicated. Without the evidence of visible intoxication, a licensee (Brandywine) cannot be found liable for damages to a third party (Connie Hiles) by a customer (Diviney). 45 P.S. § 4–497.

Hiles maintains that Brandywine's service of liquor beyond its 3:00 a.m. deadline on the morning of the accident constituted negligence *per se* pursuant to section 4–493(16) and that this violation, if a proximate cause of his intoxication and the accident, would preclude Brandywine from asserting the immunity granted by section 4–497. It follows, Hiles asserts, that the trial court erred by not instructing the jury on this point. The trial court agreed only in part, and stated in its opinion that while it may have been error to fail to instruct that section 4–493(16) is negligence *per se*, the error was harmless, as Brandywine could not have been held liable unless it served Diviney while he was visibly intoxicated pursuant to section 4–497. We agree that with no evidence to indicate visible intoxication, Brandywine cannot be held liable under the statute; therefore, the trial court did not err in instructing the jury.

While it is unlawful for a licensee to serve liquor at times not provided for by its license, and penalties may be assessed against a licensee who does so, this type of violation, standing alone, cannot result in a licensee's liability for damages by a customer to a third party. The Liquor Code simply does not provide for such a result. Hiles clings to the fact that section

4–493(1), an enumerated unlawful act found in the same section as 4–493(16), has been cited as the basis for licensee liability where the violation of such is found to be the proximate cause of a plaintiff's injury. The same should hold true, Hiles argues, for section 4–493(16). We disagree.

Section 4–493(1) and the case law arising from this section was undoubtedly the impetus for the legislature's subsequent addition of the specific, third-party liability statute, section 4–497. We decline Hiles' invitation to utilize the unlawful act of "service after hours" as another avenue by which to impose liability on licensees. Section 4–497 is clear; imposing liability on licensees for third party injuries is governed by the specific provisions of 4–497. We need not look elsewhere in disposing of the third-party liability issue instantly before us.

Thus, even if we were to assume, *arguendo*, that Hiles' contention and the trial court's suggestion that a violation of section 4–493(16) is negligence *per se*,[4] there is no support for Hiles' proposed jury instruction, *i.e.*, that serving alcohol beyond the hours permitted by a license, where such violation was the proximate cause of an injury, would result in liability to a licensee, were a licensee's customer to injure a third party. *Visible intoxication* must be proven under section 4–497 as a prerequisite to imposing any liability upon a licensee. *See Majors, supra; Johnson, supra; McDonald, supra.* Unless or until the legislature provides otherwise, we will not adopt Hiles' interpretation of the law in question.

Hiles argues that Brandywine cannot assert section 4–497 immunity pursuant to *Matthews v. Konieczny*, 515 Pa. 106, 527 A.2d 508 (1987). We find *Matthews* distinguishable from the case at hand. In *Matthews*, the Court held that statutory

4. Violation of a statute only constitutes negligence *per se* when the enactment's purpose is, exclusively or in part, to protect a class of persons which includes the one whose interest is invaded, to protect the particular interest invaded, to protect that interest against the resulting harm, and to protect that interest against the hazard from which the harm results. *Miller v. Hurst*, 302 Pa.Super. 235, 448 A.2d 614 (1982); Restatement (Second) of Torts, section 286. Hiles concedes, in his appellate brief, that there is no Pennsylvania authority which dictates that section 4–493(16) was enacted to protect third persons (such as Connie Hiles) from intoxicated drivers.

immunity from a third party lawsuit against licensees, where the party served was not visibly intoxicated, did not insulate the sellers, as licensees, from liability based on service to minors. The Court reasoned that minors do not have the legal capacity to purchase alcohol. It stated, "We simply cannot accept the contention that the General Assembly intended to provide immunity from suit to licensees who conduct their businesses in violation of the Crimes Code." *Id.* at 117, 527 A.2d at 514. Specifically, the Court held that "the statutory immunity provided in section 4-497 of the Liquor Code may not be asserted by a licensee unless the customer in question was of legal age." *Id.* The *Matthews* decision clearly aims to prevent the sale/service of alcohol to minors; we will not equate this to a situation involving the service of alcohol to legally competent customers beyond the licensee's legal serving hours.

 Finally, Hiles contends that the trial court erred during the course of the trial when it erroneously instructed the jury. Specifically, during the cross-examination of one of Hiles' witnesses, the trial court stated, in part, "The Dram Shop Act in Pennsylvania imposes liability for the service of one who is visibly intoxicated. That is done to protect people when they stagger out the door and fall down." Hiles argues that a showing of "staggering" and "falling down" is not a requirement to prove visible intoxication, and that such a statement greatly prejudiced his case and affected the outcome of the verdict. We disagree. In reviewing a challenged jury instruction, this court's scope of review is whether there was an abuse of discretion. *Williams v. Philadelphia Transportation Co.*, 415 Pa. 370, 203 A.2d 665 (1964). Here, the trial court's comment was clearly not one which would affect the outcome of the verdict, especially in light of the fact that no evidence was presented to prove that Diviney was visibly intoxicated. We find no abuse of discretion.

Judgment affirmed.