## Rivero v. Timblin

*Shawn P. McLaughlin,* for plantiff Rivero.
*Charles Jay Schleifer,* for plaintiff Latoni.
*Neal J. Rovner,* for plaintiff Banks.
*John A. Statler,* for defendant Sarah Timblin.
*Steven D. Snyder,* for defendant Brickyard Sports.
*W. Darren Powell,* for defendant Keares Inc.
*Stephen L. Banko Jr.,* for defendants Wayne and Linda Timblin.

ASHWORTH, *J.,* March 16, 2010—Before the court are the preliminary objections of defendants Keares Inc., individually and d/b/a Keares Restaurant Group, Doc Holliday's Steakhouse Inc., individually and d/b/a Doc Holliday's Steakhouse & Saloon (collectively referred to as Doc Holliday's). For the reasons set forth below, these objections will be overruled.

## I. BACKGROUND

This case is a wrongful death/survival action as a result of a motor vehicle collision that occurred on March 11, 2008. At approximately 2:45 a.m. of that date, defendant Sara Timblin, while intoxicated and driving without a license due to a suspension as a result of a prior DUI charge, proceeded in the wrong direction on Route 30 and collided head-on with a vehicle in which plaintiffs' three decedents (Inocente Sanchez, Luis Yanez Sanchez and Marlin D. Banks Sr.) were riding. Plaintiffs' decedents were pronounced dead at the scene.[1]

---

1. The factual background is ascertained from plaintiffs' complaint as the court, in considering preliminary objections in the nature of a

On May 27, 2009, plaintiffs filed a complaint alleging negligence against two bars at which Sara Timblin was drinking before the collision, Doc Holliday's and The Brickyard Restaurant & Sports Bar, as well as Sara Timblin's parents, Wayne and Linda Timblin, who allegedly were aware of their daughter's history with alcohol abuse, her prior DUI conviction, and her failure to possess a valid driver's license, prior to providing their vehicle to her for use on the night of the accident. The complaint alleges, inter alia, negligence per se against Doc Holliday's for the sale of alcoholic beverages to Sara Timblin when she was visibly intoxicated in violation of that portion of the Pennsylvania Liquor Code known as the Dram Shop Act,[2] 47 P.S. §§4-493, 4-497. (See complaint at ¶39.)

In addition, plaintiffs' complaint asserts liability against Doc Holliday's for common-law negligence based, inter alia, upon defendant allowing Timblin to leave the bar while visibly intoxicated, failing to prevent her from unsafely operating a motor vehicle given the known risk that she might engage in such conduct, failing to establish and administer procedures designed to

---

demurrer, must accept all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, as true. *Toney v. Chester County Hospital,* 961 A.2d 192, 197 (Pa. Super. 2008).

2. "Dram shop" is a term of art in the United States, referring to a bar, tavern or other establishment where alcoholic beverages are sold. The term "dram" refers to a unit of liquid measure used during the colonial period.

A dram shop act is a statute "allowing a plaintiff to recover damages from a commercial seller of alcoholic beverages for the plaintiff's injuries caused by a customer's intoxication." Black's Law Dictionary 509 (7th ed.1999).

address visibly intoxicated patrons, and failing to protect the general public from the foreseeable risk of danger that occurred. Specifically, the allegations of negligence per se, reckless indifference, outrageous conduct and common-law negligence against Doc Holiday's are set forth in paragraphs 39(a)-(c) and 41(a)-(m).

On September 14, 2009, Doc Holliday's filed preliminary objections to plaintiffs' complaint seeking, first, to dismiss the punitive damages claim and to strike the allegations of "recklessness," "carelessness," "willful," "wanton," "reckless," and "outrageous conduct" and, second, to strike the allegations of common-law negligence. On September 25, 2009, plaintiffs filed a joint answer to the preliminary objections along with a supportive brief. Reply briefs and a supplemental brief were subsequently filed by the parties. Oral argument having been heard, this matter is ripe for disposition.

## II. DISCUSSION

### A. *Punitive Damages*

The first preliminary objection of Doc Holliday's is a demurrer to plaintiffs' claim for punitive damages. I note that a demurrer admits as true all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom. *Toney v. Chester County Hospital,* 961 A.2d 192, 197 (Pa. Super. 2008). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Id.* (quoting *Price v. Brown,* 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996)).

To justify an award of punitive damages, the wrongful conduct of the defendant must be "outrageous." *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984) (adopting section 908(2) of the Restatement (Second) of Torts). Conduct is considered to be outrageous if it is intentional, willful or wanton, *Slappo v. J's Development Associates Inc.,* 791 A.2d 409, 417 (Pa. Super. 2002), malicious or oppressive, *Jahanshahi v. Centura Development Inc.,* 816 A.2d 1179, 1188 (Pa. Super. 2003), or "done with a bad motive or with a reckless indifference to the interests of others." *Judge Technical Services Inc. v. Clancy,* 813 A.2d 879, 889 (Pa. Super. 2002). Willful or wanton conduct requires a state of mind in which the tort-feasor realizes the danger and disregards it to such a degree as to evince "a conscious indifference to the perpetration of the wrong." *Lewis v. Miller,* 374 Pa. Super. 515, 520, 543 A.2d 590, 592 (1988) (quoting *Kasanovich v. George,* 348 Pa. 199, 203, 34 A.2d 523, 525 (1943)).

"Reckless indifference" refers to an intentional act "of an unreasonable character, in disregard to a risk known to [the tort-feasor] or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *McClellan v. HMO of Pennsylvania,* 413 Pa. Super. 128, 145, 604 A.2d 1053, 1061 (1992). Thus, for conduct to be considered reckless "[i]t must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." *Hall v. Jackson,* 788 A.2d 390, 403 (Pa. Super. 2001).

The determination of whether a defendant's actions constitute outrageous or reckless conduct lies within the

sound discretion of the fact-finder. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 495, 587 A.2d 702, 705 (1991); *Trotman v. Mecchella,* 421 Pa. Super. 620, 625, 618 A.2d 982, 985 (1992). For that reason, the court should decide the viability of a punitive damages claim "only when no reasonable inference from the facts alleged supports a punitive award." *Eagle Traffic Control v. Addco,* 889 F. Supp. 200, 201 (E.D. Pa. 1995) (citing *Trotman,* 421 Pa. Super. at 625, 618 A.2d at 985).

With those principles in mind, plaintiffs certainly have pled facts which, *if proven,* could justify an award of punitive damages against Doc Holliday's. A jury could certainly discern a reckless indifference to the safety of others in serving alcohol to a visibly intoxicated patron. In *Tuski v. Ivyland Café Ltd.,* 2004 WL 4962363 (First Judicial District 2004), *aff'd,* 888 A.2d 19 (Pa. Super. 2005), *alloc. denied,* 586 Pa. 773, 895 A.2d 1263 (2006), an award of punitive damages against the bar which served a visibly intoxicated person was upheld on appeal. In addressing a challenge to the punitive damages award against the visibly intoxicated person who left the Ivyland Café and proceeded to drive his vehicle into a flagman directing traffic at a construction site, the *Tuski* court noted:

"On the specific issue of punitive damages in cases involving driving while intoxicated, the Supreme Court has held '[I]n certain factual circumstances, the risks presented by a drunken driver may be so obvious and the probability that harm will follow so great that outrageous misconduct may be established without reference to motive or intent.' *Focht v. Rabada,* 217 Pa. Super. 35,

41, 268 A.2d 157, 161 (1970). When discussing the reason for this holding, the *Focht* court stated:

"Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area.

"*Focht v. Rabada,* 217 Pa. Super. 35, 41, 268 A.2d 157, 161 (1970)." *Tuski, supra* at *21.

Likewise, this court cannot say that a jury might not find, under the facts of this case, that the risks presented by serving a visibly intoxicated person with the knowledge that he or she will enter a vehicle and that harm will probably follow are so great that outrageous conduct may be established without reference to motive or intent.[3]

After discovery is completed in this case, if, as claimed by defendant Doc Holliday's, plaintiffs are unable to prove any facts to support that "Doc Holliday's employees knew or had reason to know, because of some facts, that there was a high degree of risk that defendant Tim-

---

3. The court in *Painter v. Reifsnyder,* 20 D.&C.3d 615 (Lancaster Cty. 1981), found that plaintiffs had a valid cause of action for punitive damages where decedents were killed in a car accident by a patron of a bar who had been served while visibly intoxicated. The decedent's personal representatives brought a wrongful death action and a survival action based on negligence against the owners of the bar. The court found that the plaintiffs did not have to allege intentional conduct to recover punitive damages; to hold otherwise would be in direct opposition to the purposes of deterring tavern owners from serving visibly intoxicated persons. *Id.* at 620.

blin would, after being served while visibly intoxicated, then operate a motor vehicle, and permitted the same, such that Doc Holliday's employees' actions approached what would be dubbed an intentional act" (reply brief of Doc Holliday's at 5-6), then this court will entertain a motion for summary judgment. Until then, this court is loath to decide the viability of plaintiffs' punitive damages claim as it cannot say that no reasonable inference from the facts alleged supports a punitive award.

Therefore, defendant Doc Holliday's demurrer to plaintiffs' claim for punitive damages will be overruled and dismissed at this time, without prejudice.

### B. *Common-law Negligence Claims*

Next, Doc Holliday's contends that plaintiffs' claims and allegations of common-law negligence should be stricken. Specifically, defendant claims that there is no common-law liability of a tavern owner arising from the selling of alcohol to a visibly intoxicated person and that "the only cause of action permitted under the immunity exception of section 4-497 [of the Dram Shop Act] is limited to showing that a patron was served alcoholic beverages by a licensee while visibly intoxicated and that the violation of the statute proximately caused plaintiffs' injuries." (See defendant's brief at 7.) Accordingly, the question before this court is whether the Dram Shop Act provides the exclusive remedy against a licensee arising out of the furnishing of alcoholic beverages to a visibly intoxicated person, such that all other common-law theories of negligence are preempted.

Initially, at common law a tavern owner had no liability for serving alcohol to an intoxicated person who

later injured himself or others. The rationale for this rule of non-liability was two-fold. First, courts viewed the act of drinking the alcohol, as opposed to the act of selling the alcohol, as the sole proximate cause of the patron's intoxication and later injury to a third party. An able-bodied person was responsible for his or her own actions. Second, even if the sale was the proximate cause of the intoxication, injury to a third person was an unforeseeable result of the patron's intoxication.

As the public's awareness about the potential for harm created by the selling of alcohol to irresponsible persons increased, states began to depart from the strict common-law rule of non-liability through judicial abrogation of the common-law rule, or the legislative adoption of dram shop statutes, which, under certain circumstances, provide a party injured by an intoxicated person with a cause of action against the person selling or furnishing the alcohol which caused the intoxication. The Commonwealth of Pennsylvania responded first with legislation.

By the Act of May 8, 1854, P.L. 663, the Pennsylvania Legislature enacted a liquor control law, the title of which was "To protect certain domestic and private rights and prevent abuses in the sale and use of intoxicating drinks." The first section of the Act made it a misdemeanor, punishable by fine and imprisonment, to furnish intoxicating beverages to "any person of known intemperate habits, to a minor, or to an insane person . . . [or] to any person when drunk or intoxicated." The third section of the Act subjected the offender to civil liability for any injury to person or property in consequence of the unlawful furnishing of intoxicating beverages to any person in viola-

tion of any existing law at the time the wrong or injury happens. *Fink v. Garman,* 40 Pa. 95, *7 (1861); *Bower v. Fredericks,* 46 Pa. Super. 540, *2 (1911). Thus, dram shop liability was imposed in Pennsylvania as early as 1854.

Approximately 100 years later, the Act of 1854 was repealed and replaced with our modern Liquor Code, 47 P.S. §§1-101—9-902 (1951). This statute incorporated the misdemeanor provision of section 1 of the former Act at 47 P.S. §4-493(1): "It shall be unlawful . . . [f]or any licensee . . . to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits." Section 3 of the Act of 1854 — the dram shop provision imposing civil liability on the licensee for injuries resulting from a violation of the first provision—was not incorporated into the new Liquor Code of 1951. The elimination of a civil liability statute did not, however, eliminate civil liability for licensees who furnished alcoholic beverages in violation of the law.

The matter of *Schelin v. Goldberg,* 188 Pa. Super. 341, 146 A.2d 648 (1958), was the first case seeking to impose civil liability on a licensee following the repeal of the dram shop provision in section 3 of the Act of 1854. In *Schelin,* a visibly intoxicated bar patron became an annoyance to the other customers. He eventually got into an argument with one and was struck from behind by that patron and sustained injuries. The plaintiff based his theory of liability on the fact that the bartender had vio-

lated 47 P.S. §4-493(1) by serving him alcoholic beverages after he was "visibly intoxicated."

Even though the civil liability provision of the 1854 Liquor Control Act had been repealed, the Superior Court held that "[w]hen an Act embodying in expressed terms a principle of law is repealed by the legislature, then the principle of law as it existed at common law is still in force." 188 Pa. Super. at 346, 146 A.2d at 651. The appellate court in *Schelin* agreed with the lower court that it was negligent for the defendant to have served intoxicating beverages to the plaintiff when he was already intoxicated. Thus, applying the Restatement of Torts, §286,[4] the court allowed recovery under a common-law theory of negligence, established by the violation of section 4-493(1). Since the jury found that negligence was the proximate cause of the plaintiff's injury,[5] liability was imposed on the defendant licensee.

---

4. "*Section 286. Violations creating civil liability.* The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect; and (c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and, (d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action." Restatement of Torts, §286.

5. The Superior Court further held that, under section 483 of the Restatement of Torts, the defense of contributory negligence was not available where the statute protected the injured person because of his inability to exercise self-protective care. Section 483 provided: "If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective

The Superior Court also quoted from the 1861 Supreme Court decision in *Fink v. Garman,* 40 Pa. 95 (1861), wherein Mr. Justice Woodward noted: "It would probably be found, if it were worthwhile to go into an examination of all prior legislation, that it never was lawful, but always unlawful negligence in Pennsylvania to furnish liquors to men actually drunk at the time, or known to be habitually intemperate."[6] From this, the *Schelin* court concluded that the dram shop provision in section 3 of the 1854 legislation was not the real basis of the licensee's liability. 188 Pa. Super. at 349, 146 A.2d at 652.

Six years later, the Supreme Court relied upon the Superior Court's analysis in *Schelin* when it held that tavern owners owed a common-law duty, independent of statute, to conduct themselves with reasonable care and prudence when dispensing alcohol and to protect others from visibly intoxicated persons. In *Jardine v.*

---

care, a member of such class is not barred by his contributory negligence from recovering for bodily harm caused by the violation of such statute." *Supra* at 348, 146 A.2d at 652.

6. Over 150 years ago, the Supreme Court recognized the risk of selling alcohol to an intoxicated person and the duty to refrain from such conduct in *Fink v. Garman, supra.* "There, Jacob Fink, an innkeeper, served Jacob Garman, a man generally known for his intemperate habits and at the time already drunk, with an additional quantity of intoxicating liquor. Garman thereby became so inebriated that when he mounted his horse he fell to the ground and was killed beneath the wheels of a wagon. His widow brought suit against the innkeeper under the Act of 1854 and recovered a verdict. The innkeeper appealed. Th[e Supreme] Court affirmed the judgment, saying: 'No standard of social duty, or of obedience to law, can be applied to Fink's act which will not prove it to have been in a very eminent sense unlawful negligence.'" *Manning v. Yokas,* 389 Pa. 136, 140-41, 132 A.2d 198, 200 (1957).

*Upper Darby Lodge No. 1973 Inc.,* 413 Pa. 626, 198 A.2d 550 (1964), a pedestrian was seriously injured when struck by an allegedly intoxicated driver. The pedestrian brought suit against the Upper Darby Lodge, charging that it was negligent by serving alcoholic beverages to the driver after he was already visibly intoxicated. A jury returned a verdict in favor of the pedestrian and the lodge appealed arguing that the serving of alcohol to the driver was not the proximate cause of the pedestrian's injuries.

The Pennsylvania Supreme Court held that the serving of alcohol to an intoxicated person could be the proximate cause of the injuries inflicted on the pedestrian and that the lodge had a duty, apart from statute, not to serve the driver:

"The repeal of the Dram Shop Act [of 1854] did not wipe out the remedy which that Act afforded victims of intoxicated persons. The Superior Court said in *Schelin v. Goldberg,* 188 Pa. Super. 341, [146 A.2d 648,] 'When an Act embodying in expressed terms a principle of law is repealed by the legislature, then the principle as it existed at common law is still in force.'

"Since an intoxicated person is and can be an instrument of danger to others, especially if he is operating a motor vehicle, the legislature of Pennsylvania declared by the [Liquor Code] . . . that it shall be unlawful for any person to sell liquor to one already intoxicated. The first prime requisite to de-intoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him. *This is a duty which everyone owes to society and to law entirely apart from any statute.* The person who

would put into the hands of an obviously demented individual a firearm with which he shot an innocent third person would be amenable in damages to that third person for unlawful negligence. An intoxicated person behind the wheel of an automobile can be as dangerous as an insane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless. To serve an intoxicated person more liquor is to light the fuse." *Id.* at 631-32, 198 A.2d at 553. (emphasis added)

With this case, our Supreme Court recognized the need to allow a common-law cause of action against licensees who serve intoxicated patrons. The court thereby abrogated the common-law rule of non-liability for a liquor vendor, where a third person is injured by the acts of an intoxicated patron, by finding, first, that the negligent serving of alcohol to a visibly intoxicated patron could be the proximate cause of injury to a third person and, second, that such injury to a third person was an eminently foreseeable result of serving an intoxicated customer more liquor.

Having determined that the sale of liquor may be the proximate cause of injuries sustained by a third person, it is clear that under Pennsylvania law the licensee is under a duty not to sell liquor where the sale creates a risk of harm to the customer or to others. This conclusion flows from general principles of negligence law—every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others. See Restatement (Second) of Torts, §315. In selling liquor to an intoxicated patron, where there is evidence that the cus-

tomer may injure himself or others as a result of the intoxication, a vendor is not acting as a reasonable person would.[7] I echo the words of the Supreme Court: "The first prime requisite to de-intoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him. This is a duty which everyone owes to society and to law entirely apart from any statute." *Jardine, supra* at 631, 198 A.2d at 553. Our Supreme Court clearly recognized that the continued existence of the rule of non-liability for liquor vendors was both bad law and bad social policy.

This *Jardine* decision has been cited by at least 18 jurisdictions around the country as recognizing a common-law cause of action against a licensee for injuries caused by an intoxicated customer. See for example, *Shannon v. Wilson,* 329 Ark. 143, 154-55, 947 S.W.2d

---

7. I would add that the purpose of the Liquor Code is to *restrain* the sale of alcohol and *to protect* the public welfare, health, peace, and morals of the citizens of Pennsylvania. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 601 Pa. 449, 463, 974 A.2d 1144, 1153 (2009) (citing 47 P.S. §1-104(a)). In *Schelin, supra,* the Superior Court found that section 4-493 was enacted not only to protect society generally, but also "to protect *specifically* intoxicated persons from their inability to exercise self-protective care." 188 Pa. Super. at 348, 146 A.2d at 652. (emphasis in original) Moreover, the Supreme Court of Pennsylvania, in *Commonwealth v. Koczwara,* 397 Pa. 575, 584, 155 A.2d 825, 829-30 (1959), concluded that, in enacting the Liquor Code, legislative intent was "to place a very high degree of legal responsibility upon the holder of a liquor license to make certain that neither he nor anyone in his employ commit any of the prohibited acts upon the licensed premises. Such a burden of care is imposed upon the licensee in order to protect the public from the potentially noxious effects of an inherently dangerous business."

349, 354-55 (1997); *Ellis v. N.G.N. of Tampa Inc.,* 586 So.2d 1042, 1045-46 (Fla. 1991); *Samson v. Smith,* 560 A.2d 1024, 1026 (Del.Supr. 1989); *Grayson Fraternal Order of Eagles, Aerie No. 3738 Inc. v. Claywell,* 736 S.W.2d 328, 331 (Ky. 1987); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 310 n.1 (Tex. 1987); *Largo Corp. v. Crespin,* 727 P.2d 1098, 1101 (Colo. 1986); *Ling v. Jan's Liquors,* 237 Kan. 629, 641, 703 P.2d 731, 741 (1985); *Sutter v. Hutchings,* 254 Ga. 194, 196, 327 S.E.2d 716, 718 (1985); *Sorensen by Kerscher v. Jarvis,* 119 Wis.2d 627, 649, 350 N.W.2d 108, 119 (1984); *Haafke v. Mitchell,* 347 N.W.2d 381, 388 (Iowa 1984); *Ontiveros v. Borak,* 136 Ariz. 500, 507, 667 P.2d 200, 207 (1983); *Nazareno v. Urie,* 638 P.2d 671, 674 (Alaska 1981); *Marchiondo v. Roper,* 90 N.M. 367, 369 n.2, 563 P.2d 1160, 1162 n.2 (1977); *Holmes v. Circo,* 196 Neb. 496, 502, 244 N.W.2d 65, 69 (1976); *Trail v. Christian,* 298 Minn. 101, 110 n.10, 213 N.W.2d 618, 623 n.10 (1973); *Vesely v. Sager,* 95 Cal.Rptr. 623, 629, 5 Cal.3d 153, 161, 486 P.2d 151, 157 (1971); *Adamian v. Three Sons Inc.,* 353 Mass. 498, 501 n.10, 233 N.E.2d 18, 20 n.10 (1968); *Lee v. Peerless Ins. Co.,* 248 La. 982, 991 n.8, 183 So.2d 328, 331 n.8 (1966).[8]

---

8. As noted by the Supreme Court of Texas in 1987, Pennsylvania was not in the minority in recognizing such a common-law action:

"In recent years, modern analyses have discarded the absolute rule of no liability in favor of an approach incorporating current legal understanding as dictated by conditions and circumstances of modern society. An intoxicated person is by definition not an able-bodied nor able-minded person. Of 50 American jurisdictions (including the District of Columbia and excluding Texas), 29 recognize a common-law cause of action against an alcoholic beverage purveyor for injuries caused by an intoxicated customer. . . . Additionally, 19 state legislatures have enacted civil dram shop liability, . . . seven of which also

Thus, in 1964, the Pennsylvania Supreme Court adopted a dram shop doctrine as a matter of common-law negligence, namely, a licensee may be liable for injury caused by the sale of liquor to a visibly intoxicated patron. In abrogating the common-law rule of non-liability for a liquor vendor, the court recognized that "[w]hen a common-law rule, in effect, would pervert justice and contravene legislative and societal needs, and it is not in the best interests of justice or public policy, a change by the court is mandated."[9] *Commonwealth v. Hooks,* 921

---

have recognized a complementary and supplemental common-law cause of action. . . . In total, a civil cause of action exists in 41 jurisdictions with a substantial majority basing the cause of action upon the common-law principles of negligence, negligence per se, or both. Focusing on the carnage inflicted upon innocent victims by drunk drivers, courts have rejected the rationale supporting no liability as outdated and unrealistic and thus invalid. Injury to a third person is no longer unforeseeable in an age when death and destruction occasioned by drunk driving is so tragically frequent." *El Chico Corp. v. Poole, supra* at 310. (footnotes omitted)

9. There have been numerous decisions where the Supreme Court has not hesitated to reconsider the common law in light of current social conditions and public policy: *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981) (abolishing the defense of interspousal immunity as a bar to tort actions); *Soffer v. Beech,* 487 Pa. 255, 409 A.2d 337 (1979) (abandoning common-law rule that actual possession is prerequisite to an action in ejectment); *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979) (abandoning per se rule disqualifying testimony of the spouse of a surviving interested party to a transaction with a decedent); *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) (abrogating common-law rule permitting husband but not wife to recover for consortium); *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974) (eliminating presumption that father has primary burden to support minor children); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abrogating parental immunity); *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964) (rejecting lex loci conflicts of law rule); *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975) (abolishing

250

A.2d 1199, 1208 (Pa. Super. 2007). See also, *Schaaf v. Kaufman,* 850 A.2d 655, 661 (Pa. Super. 2004) ("[I]t is inherent in the common-law model that judges be able to adapt, change, or even discard old rules as needed to fit changed circumstances. . . ."). It is clear that, following the 1951 repeal of the dram shop provision in the Act of 1854, Pennsylvania courts construed provisions of the Pennsylvania Liquor Code *and* common-law negligence principles as imposing civil liability on those who serve visibly intoxicated patrons if the unlawful action results in injury to another. See *Smith v. Evans,* 421 Pa. 247, 219 A.2d 310 (1966); *Jardine, supra; Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963); *Corcoran v. McNeal,* 400 Pa. 14, 161 A.2d 367 (1960); *Couts v. Ghion,* 281 Pa. Super. 135, 421 A.2d 1184 (1980); *Connelly v. Ziegler,* 251 Pa. Super. 521, 380 A.2d 902 (1977); *Schelin, supra.* See also, *Bradshaw v. Rawlings,* 612 F.2d 135, 141 (3d Cir. 1979) (noting that in Pennsylvania the liability of licensees to injured parties derives from the common law as well as from a violation of Pennsylvania's Dram Shop statute, 47 P.S. §4-493(1)); *Gerhart v. Hummel,* 18 D.&C.3d 63, 66 (Lancaster Cty. 1981) (noting that "Pennsylvania courts . . . have construed provisions of the Pennsylvania Liquor Code and common-law negligence principles as imposing civil liability on those who serve minors and visibly intoxicated patrons if the unlawful action results in injury to another: *Jardine v. Upper Darby Lodge No. 1973,* 413 Pa. 626, 198 A.2d 550 (1964); *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963)."). (footnote omitted)

common-law presumption that husband is the exclusive owner of household goods).

For these reasons, I must reject defendant's basic assertions that "[t]here is no common-law liability arising from the [sic] furnishing alcohol" and "[t]he current Dram Shop Act provides for a cause of action that did not exist at common law." (See defendant's brief at 6; defendant's reply brief at 8.) As explained above, the Supreme Court has recognized a common-law cause of action in negligence against a licensee for injuries resulting from the furnishing of alcohol to a visibly intoxicated customer in violation of the Commonwealth's Liquor Code.

Moreover, the case law is clear that the Dram Shop Act does not give rise to a statutory civil cause of action but rather it "imposes a duty upon the defendant-licensees, the violation of which is negligence per se and gives rise to an action in tort." *Alfred M. Lutheran Distributors Inc. v. A.P. Weilersbacher Inc.,* 437 Pa. Super. 391, 407, 650 A.2d 83, 91 (1994) (citing *Matthews v. Konieczny,* 515 Pa. 106, 113, 527 A.2d 508, 512 (1987); *Majors v. Brodhead Hotel,* 416 Pa. 265, 268, 205 A.2d 873, 875 (1965); *Jardine, supra* at 632, 198 A.2d at 553; *Thomas v. Duquesne Light Co.,* 376 Pa. Super. 1, 10, 545 A.2d 289, 293 (1988), *aff'd,* 528 Pa. 113, 595 A.2d 56 (1991), and *Connelly, supra* at 524, 380 A.2d at 903). The Superior Court in *Lutheran Distributors* observed that in these cited decisions the Supreme Court acknowledged "the differences between a cause of action created by statute and a common-law tort action pursuant to which a statutorily imposed duty may be enforced." *Id.* at 410, 650 A.2d at 92. The court continued:

"[T]he justices' explanations make it clear that the Liquor Code does not create a private statutory cause of

action. Rather, the Supreme Court has long deemed the Liquor Code to be a penal statute which contains a legislative standard of conduct for which civil liability may be imposed, by way of a *common-law tort action,* upon a defendant who violates it." *Id.* (citing *Matthews, supra; Manning v. Andy,* 454 Pa. 237, 310 A.2d 75 (1973); *Majors, supra* and *Jardine, supra).* (emphasis added) See also, *Detwiler v. Brumbaugh,* 441 Pa. Super. 110, 114-15, 656 A.2d 944, 946-47 (1995) (section 4-497 of the Liquor Code does not create a cause of action). Thus, defendant's contention that "[t]he current Dram Shop Act provides for a cause of action that did not exist at common law" must be rejected. The Liquor Code does not create the cause of action; the ordinary principles of negligence do that.

Defendant also claims that section 4-497 of the Dram Shop Act "provides licensees with immunity from all claims other than those of service to a visibly intoxicated customer of legal age," citing *Matthews v. Konieczny, supra,* and *Hiles v. Brandywine Club,* 443 Pa. Super. 462, 662 A.2d 16 (1995). (See defendant's brief at 7.) One year after the 1964 Supreme Court decision in *Jardine,* the Pennsylvania Legislature amended the Liquor Code by enacting the following dram shop provision:

"*Section 4-497. Liability of licensees*—No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or malt or brewed beverages by the said licensee or his agent,

servant or employe when the said customer was visibly intoxicated." 47 P.S. §4-497.

*Hiles* made it clear that, with the enactment of this provision in 1965 (re-enacted in 1987), "[v]isible intoxication must be proven under section 4-497 as a *prerequisite* to imposing any liability upon a licensee." *Hiles, supra* at 470, 662 A.2d at 20. (emphasis added) Contrary to defendant's position, I would suggest that the use of the word "prerequisite" by the Superior Court supports plaintiffs' position that once the threshold level of negligence has been established, *i.e.*, serving a visibly intoxicated patron, other common-law claims of negligence can be asserted.

Similarly, one could argue that the Supreme Court's identification of the dram shop provision as "statutory immunity" in *Matthews* further supports plaintiffs' position. In *Matthews,* the court was faced with the issue of whether a commercial licensee of alcoholic beverages can be liable to a person injured as a result of service of alcohol to a minor. The *Matthews* court "conclude[d] that as a matter of common law a commercial licensee of alcoholic beverages can be held liable to a third person for damages proximately caused by the service of alcohol to a minor." *Id.* at 113, 527 A.2d at 512. (footnote omitted) The vendors argued that regardless of whether such a common-law cause of action existed "the General Assembly ha[d] granted them an immunity from third party suits in all cases where the party served was not visibly intoxicated." *Id.* at 114, 527 A.2d at 512. While this argument was accepted by the Superior Court, it was soundly rejected by the Supreme Court, which held that the existence of the common-law cause of ac-

tion is not limited by section 4-497 of the Liquor Code to instances in which the minor was "visibly intoxicated" at the time of the sale because the Crimes Code prohibits minors purchasing or consuming alcohol. *Id.* at 117, 527 A.2d at 514.

Again, this case suggests that there is a prerequisite or threshold that a plaintiff must meet before an action against a commercial liquor vendor may proceed, *i.e.,* sale of intoxicating liquor to a visibly intoxicated adult. Otherwise, the licensee is immune from suit.

Similarly, in *Detwiler, supra,* the Superior Court recognized that "section 4-497 is clearly a limiting provision designed to specifically shield licensees from liability to third parties except in those instances where the patron served was visibly intoxicated." *Supra* at 114, 656 A.2d at 946. The court held that this section does not create liability against a licensee but rather limits the extent of a licensee's liability to third parties for damages caused off-premises by a customer to those customers who were visibly intoxicated when served alcoholic beverages. "It is clear that section 4-497 acts as a shield restricting liability instead of a provision defining where it is to apply." *Id.* Thus, I cannot conclude that *Matthews; Hiles;* and *Detwiler* establish, as defendant claims, that section 4-497 "provides licensees with *immunity from all claims* other than those of service to a visibly intoxicated customer of legal age." (See defendant's brief at 7. (emphasis added))

No Pennsylvania appellate court has addressed this precise issue of whether section 4-497 of the Dram Shop Act provides the exclusive remedy for injuries resulting from a licensee's violation of that Act, such that all

other common-law theories of negligence are preempted. Moreover, there has been no consensus among those courts of common pleas around the Commonwealth that have written on the subject.

In *Cipriani v. Szopo,* no. 10006 of 2003, slip op. (Beaver Cty. March 20, 2003), the plaintiff brought suit seeking to recover damages for injuries suffered from a head-on motor vehicle collision. The other driver was highly intoxicated at that time with a blood alcohol level of .262. The plaintiff alleged various theories of liability to support his claim of negligence against each of the four defendant bars, including one based on section 4-497 of the Liquor Code for serving alcoholic beverages to the defendant driver "while visibly intoxicated." The plaintiff further alleged that the licensees were negligent in that they "knew or should have known Richards would be operating his vehicle," "caused [the driver] to become intoxicated," "employed servants who were incompetently trained," "failed to train their employees regarding the amount of liquor to serve to a customer," "failed to train employees to recognize the signs of visible intoxication," "had policies in force which promoted drinking to excess," "failed to protect patrons and the public from harmful effects of alcohol," and "served a person of known intemperate habits." Slip op. at 2-3.

The four licensees each filed preliminary objections asserting that the only basis of their liability under the Dram Shop Act is service of alcohol to a person who is visibly intoxicated and that all of the other allegations of negligence must be dismissed or stricken because they assert legal duties which are not recognized by law. The Honorable Deborah A. Kunselman rejected these asser-

tions and held that the plaintiff stated a claim for relief under the various theories of negligence. Slip op. at 4.

This court's research also uncovered many cases from other jurisdictions around the Commonwealth that have proceeded with claims for common-law negligence as well as violations of the Dram Shop Act. See for example, *Schaub v. Trainer's Inn Inc.,* no. 06-2257, slip op., Nanovic, P.J. (Carbon Cty. Feb. 19, 2009) (motion for summary judgment addressed in an action alleging negligence generally, negligence per se for being served alcohol while visibly intoxicated and underage, and negligent supervision by defendant licensee's employees); *Yeager v. Younker,* no. 2004-1822, slip op., Lunsford, J. (Centre Cty. August 2006) (motion for summary judgment addressed in an action asserting common-law negligence and violation of section 4-493(1) of the Dram Shop Act); *Currie v. Phillips,* no. 2003 Civil 378, slip op., Minora, J. (Lackawanna Cty. August 15, 2003) (preliminary objections addressed in an action asserting claims for common-law negligence and violations of the Dram Shop Act).

There have been, however, other common pleas courts that have sustained the preliminary objections of defendant licensees seeking to strike allegations of negligence outside the narrow confines of the Dram Shop Act. In *Kortum v. 1K Second Street Associates,* 123 Dauphin Rep. 463 (Dauphin Cty. Jan. 3, 2008), the Honorable Joseph H. Kleinfelter held that the case of *Hiles, supra,* "makes it clear that the Liquor Code provides not only a basis for liability; viz., sales to visibly intoxicated persons; but that it also restricts liability to those exact circumstances." *Id.* at 465. The court further paraphrased

Justice Cirillo's language in *Hiles, supra,* when it stated that "the enactment of section 4-497 provides the exclusive prerequisite for imposing civil liability on a licensee." *Id.* at 465 (citing *Hiles, supra* at 470, 662 A.2d at 20). From this language, our sister court concluded that the defendant bar was entitled to have stricken from the plaintiff's complaint those paragraphs that sought to impose liability on theories of negligence other than the one set forth at section 4-497, which pertains to the serving of alcohol to visibly intoxicated persons.

A similar result was reached in Armstrong County in 2003. In *Clark v. Thompson,* no. 2002-0260-Civil, the Honorable Joseph A. Nickleach held that a defendant driver could not assert both Dram Shop Act and common-law tort claims against the defendant bar because the Act provides the sole means of establishing liability upon a tavern owner for serving alcohol to a patron who later injures a third party. The Armstrong County court also relied upon the decision in *Hiles,* as well as the appellate decision in *Detwiler,* wherein the Superior Court recognized that "section 4-497 is clearly a limited provision designed to specifically shield licensees from liability to third parties except in those instances where the patron served was visibly intoxicated." Slip op. at 9 (quoting *Detwiler, supra* at 114, 656 A.2d at 946).

The court in *Clark* further supported its interpretation of the Dram Shop Act by analogy to other statutory acts which have, in other areas of law, defined and limited liability, thereby preempting previously controlling common-law standards of negligence; for example, the Workers' Compensation Act. Slip op. at 10. Thus, the Armstrong County court held that section 4-497 pro-

vided the exclusive remedy under the facts presented and, therefore, granted the defendant bar's preliminary objections to the common-law theories of negligence.

This lack of consensus among the common pleas courts suggests that there is no bright line rule relative to the preemption of common-law negligence claims by the Dram Shop Act. Moreover, I must respectfully take issue with the *Clark* court's conclusion that such a position is supported by analogy to the Workers' Compensation Act. It is correct that, under Pennsylvania law, "[w]here an employee's injury is compensable under the [Workers' Compensation] Act, the compensation provided by the statute is the employee's *exclusive remedy* against his or her employer" and the injured employee cannot maintain a tort action against his or her employer. *Hykes v. Hughes,* 835 A.2d 382, 384 (Pa. Super. 2003) (citing 77 P.S. §481(a)[10]). (emphasis added)[11] However, there is no similar exclusivity provision in the Pennsylvania Dram Shop Act that precludes a common-law tort action against a licensee.[12] "The legislature must affirmatively repeal

---

10. This section states in relevant part:

"The liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employes . . . or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108." 77 P.S. §481(a).

11. See also, the Post Conviction Relief Act, 42 Pa. C.S. §§9541-9546 (PCRA), which provides in relevant part: "The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. . . ." 42 Pa. C.S. §9542.

12. It is noteworthy that some state dram shop statutes specifically state that the act provides the exclusive remedy for such causes of

existing law or *specifically preempt accepted common law* for prior law to be disregarded." *Metropolitan Property & Liability Insurance Co. v. Insurance Commissioner of Pennsylvania,* 525 Pa. 306, 310, 580 A.2d 300, 302 (1990). (emphasis added) Having specifically preempted accepted common law in other areas, and not in the Liquor Code, it is fair to argue that the legislature did not intend such a result.

Absent such an exclusivity provision and after a thorough review and analysis of the statutory and appellate case law, it is not clear that section 4-497 of the Liquor Code subsumes all common-law negligence claims against a licensee for injuries resulting from the furnishing of intoxicating beverages to an already intoxicated

---

action. See for example, the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1-7, which provides in section 4: "This Act shall be the exclusive civil remedy for personal injuries or property damages resulting from the negligent service of alcoholic beverages," and *Verni v. Harry M. Stevens Inc.,* 387 N.J. Super. 160, 187 (App. Div.), *certif. denied,* 189 N.J. 429 (2007) ("Common-law claims arising out of the negligent service of alcoholic beverages are thus barred by the exclusivity provisions of the Beverage Server Act."); the Michigan Liquor Control Code, MCL 436.1801(10), which provides that it is the "exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor" and *Jackson v. PKM Corp.,* 430 Mich. 262, 422 N.W.2d 657 (1988) (the exclusive remedy provision precludes a person from bringing a common-law action for gross negligence, willful and wanton, or intentional misconduct against a liquor licensee); and the Texas Alcoholic Beverage Code, Tex. Alco. Bev. Code §2.03, which states: "The liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. . . . This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older."

customer. Accordingly, I respectfully decline to follow cases of other common pleas courts which have reached the opposite result. Unless and until our appellate courts establish a bright line rule, I am compelled by the above-stated analysis and by the standards that govern review of preliminary objections[13] to overrule defendant's preliminary objections.

## III. CONCLUSION

For the reasons set forth above, the preliminary objections of Doc Holliday's will be overruled.

According, I enter the following:

## ORDER

And now, March 16, 2010, upon consideration of the preliminary objections of defendants' Keares Inc., individually and d/b/a Keares Restaurant Group, Doc Holliday's Steakhouse Inc., individually and d/b/a Doc Holliday's Steakhouse & Saloon, plaintiffs' response thereto, the briefs filed by the parties, and after oral argument of counsel, it is hereby ordered that said preliminary objections are overruled. Defendants shall have 20 days from the date of this order to file answers to plaintiffs' complaint.

---

13. "The question presented by the demurrer is whether, on facts averred, the law says *with certainty* that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Toney v. Chester County Hospital,* 961 A.2d at 197 (quoting *Price,* 545 Pa. at 221, 680 A.2d at 1151 (emphasis added)).