**KAREN BARRETT, Plaintiff**

**v.**

**PAUL HENRYS, M.D., ROY LESTER SCHNEIDER HOSPITAL, THE ESTATE OF JAMES H. JULIEN, ROBERT ELLIS BROWN, INC. d/b/a ISLAND BLUES SEASIDE BAR, GENOVEVA RODRIGUEZ and JAMES PHILLIPS d/b/a COCCOLOBA, Defendants**

Case No. ST-08-CV-026

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 3, 2012

MARK E. GUGLIELMI, ESQ., Feuerstein & Smith, LLP, Buffalo, NY, *Attorney for the Plaintiff.*

DOUGLAS L. CAPDEVILLE, ESQ., St. Croix, USVI, *Attorney for Defendant Island Blues.*

JAMES L. HYMES, ESQ., St. Thomas, USVI, *Attorney for Defendants Paul Henrys, M.D., Roy Lester Schneider Hospital, and GOVI.*

GARY GARTEN, ESQ., St. Thomas, USVI, *Attorney for Defendant Coccoloba.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(May 3, 2012)

At a December 14, 2011 Hearing, Counsel for Plaintiff, Karen Barrett, and Counsel for Defendant, Robert Ellis Brown, Inc. d/b/a/ Island Blues Seaside Bar (hereinafter "Island Blues"), presented oral arguments regarding the recognition of common law "dram shop"[1] liability in the territory of the Virgin Islands. The Hearing was prompted by Defendant's September 9, 2009 Motion to Dismiss, Plaintiff's Opposition, filed October 6, 2009, and Defendant's Reply, filed October 23, 2009.

## I. FACTS and PROCEDURAL HISTORY

On or about February 28, 2006, James Julien, now deceased, consumed alcoholic beverages at Island Blues. Soon after leaving Island Blues he drove to the Coccoloba Shopping Center. While pulling into a parking space, Mr. Julien pressed the gas instead of the brake and accelerated, pinning Plaintiff, Karen Barrett, between his car and a brick wall, thereby causing her serious injury. Plaintiff makes no allegation as to Mr. Julien's level of intoxication, no allegation as to how many drinks he may have consumed, and no allegation as to any observable effects the alcohol may have had on Mr. Julien at any time before the accident occurred. The officers arriving at the scene of the accident performed neither a field sobriety test on Mr. Julien nor a breathalyzer test. Conspicuously absent from Plaintiff's Complaint, Amended Complaint, and Second Amended

---

[1] " 'Dram shop' is a term of art in the United States, referring to a bar, tavern or other establishment where alcoholic beverages are sold. The term 'dram' refers to a unit of liquid measure used during the colonial period." *Rivero v. Timblin*, 12 Pa. D. & C. 5th 233, 235 n. 2 (Pa. Com. Pl. March 16, 2010).

Complaint is any mention that James Julien received any traffic citation for negligent driving, much less driving under the influence. Plaintiff has sued numerous parties arising out of the injuries she sustained that day under various theories of legal liability.

Defendant argues that Plaintiff's claim should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. According to Defendant, Plaintiff is requesting that the Court impose "dram shop" negligence liability in the absence of a "dram shop" statute. This, according to Defendant, is a claim not recognized in the territory of the Virgin Islands.

## II. STANDARD OF REVIEW

A motion to dismiss a civil complaint is governed by FED. R. CIV. P. 8(a)(2) and 12(b)(6). Rule 8 requires that a complaint contain "a short and plain statement of the claims showing the pleader is entitled to relief."[2] If a complaint fails to meet this requirement, Rule 12 allows a court to dismiss the complaint for failure to state a claim upon which relief can be granted.[3] Further, in accordance with *Bell Atlantic Corp. v. Twombly*, when ruling on a defendant's motion to dismiss, a court must utilize a "plausibility" standard, which requires a determination of whether a complaint has "enough facts to state a claim of relief that is plausible on its face."[4] The plausibility standard requires something more than "mere probability."[5]

Pursuant to *Ashcroft v. Iqbal*,[6] there are two working principles underscoring the *Twombly* plausibility standard. First, "the tenet that a court must accept as true *all* of the allegations contained in a complaint is inapplicable to legal conclusions."[7] Suitably restated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[8] Second, "only a complaint that

---

[2] FED. R. CIV. P. 8(a)(2).

[3] FED. R. CIV. P. 12(b)(6).

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[5] *Id.* at 556.

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

[7] *Id.* at 1949 (emphasis added).

[8] *Id.*

states a plausible claim for relief survives a motion to dismiss."[9] Determining whether a complaint states a plausible claim for relief is a context-specific task during which a court should draw upon its "judicial experience and common sense."[10] "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief."[11] Thus, the complaint would be subject to dismissal.

Applying the new "plausibility standard," the Third Circuit Court of Appeals provided the following summary in *Fowler v. UPMC Shadyside*,[12] recognizing the shift from simple notice pleading to a more heightened form of pleading.

> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The *District Court* must *accept all of the complaint's well-plead facts as true*, but may *disregard any legal conclusions*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more man allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' " This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (Emphasis added.)[13]

The "plausibility" standard is similarly explained by legal academics.[14] According to scholars, the Court must first identify all factual allegations

---

[9] *Id.* at 1950.

[10] *Id.*

[11] *Id.* (citing FED. R. CIV. P. 8(a)(2)).

[12] 578 F.3d 203 (3d Cir. 2009).

[13] *Id.* at 210-211 (internal citations omitted).

[14] After the *Iqbal* decision, many in the legal community have attempted to summarize and explain the "plausibility" standard. According to one commentator, "a reviewing court should identify all legal allegations in a complaint, which are not entitled to a presumption

contained in a complaint and weed out statements unsupported by facts, conclusive in nature or merely a recital of elements. Secondly a court must conduct a context-specific analysis of the facts based on the court's judicial experience and common sense. Under this step, a court must determine whether Plaintiff has alleged enough facts to raise a reasonable expectation of relief and that any unknown variable will be answered definitively during discovery. There must be some evidence to justify moving a case beyond the pleading stage to the next stage of litigation. *If there are too many unknown variables that cannot be answered definitively during discovery, then the plaintiff "has not nudged [his] claims across the line from conceivable to plausible. A court may then dismiss the complaint under Rule 8."*[15] In essence, the new pleading standard requires complaints to contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[16]

## III. ANALYSIS

The issues to be resolved by this Court are: (1) whether Counts IV and V of the Second Amended Complaint contain sufficient factual allegations to survive scrutiny under the *Iqbal* and *Twombly* pleading standards; and (2) assuming *arguendo* that the Second Amended Complaint survives such scrutiny, whether this Court can recognize "dram shop" negligence liability in the absence of a "dram shop" statute.

### A. Sufficient Factual Allegations Have Not Been Pled to Survive Scrutiny Under the *Iqbal* and *Twombly* Standards.

The first issue is whether Plaintiff pleaded sufficient facts in Counts IV and V of the Second Amended Complaint to present a plausible claim for relief against Defendant Robert Ellis Brown, Inc., d/b/a Island Blues Seaside Bar.

---

of truth . . . if the complaint contains more than [mere] conclusions, then the court should examine all factual allegations, taken as true, and determine whether they plausibly give rise to an entitlement of relief." Rajiv Mohan, *A retreat from decision by Rule in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)*, 33 HARV. J.L. & PUB. POL'Y 1191, 1194 (2010).

[15] Rhonda Wasserman & Frederick B. Goldsmith, *Third Circuit Court Practitioners Guide to Twombly and Iqbal*, Vol. 12, No. 13 LAWYERS J. 8, 9-10 (June 18, 2010) (emphasis added); *see also* Victor E. Schwartz and Christopher E. Appel, *Rational Pleading in the Modern World of Civil Litigation: The Lessons and Public Policy Benefits of Twombly and Iqbal*, 33 HARV. J.L. & PUB. POL'Y 1107, 1128-1133 (Summer 2010).

[16] *Iqbal*, 129 S. Ct. at 1949.

■ As described in Section II *supra*, in order to survive a 12(b)(6) motion to dismiss a complaint must satisfy the two requirements outlined in *Iqbal* which undergird *Twombly*'s plausibility requirement. Those requirements are: (1) the complaint must contain some factual basis beyond mere legal conclusions; and (2) the complaint must present a plausible claim for relief.[17] According to *Iqbal*, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

In the case *sub judice*, the Court finds that Plaintiff's Second Amended Complaint *does not* contain sufficient factual content to allow the Court to reasonably infer that the Defendant, Island Blues, is liable for the damages caused to Plaintiff by Mr. James Julien.

Central to Plaintiff's claim against Defendant is her contention that Mr. James Julien was intoxicated while at Island Blues. The only portions of Plaintiff's Second Amended Complaint which purport that Mr. Julien was intoxicated are set forth in paragraph 58 of Count IV and paragraphs 70, and 71 of Count V. Those paragraphs read as follows:

58. Upon information and belief, at the same time, an individual named James H. Julien, immediately after consuming alcoholic beverages **and while intoxicated**, was operating his 1989 Jeep Wrangler, (vehicle plate number JAE-299), in the parking lot described in detail above.

70. That upon information and belief, Julien was lawfully upon the aforementioned premises owned by Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) on February 28th, 2006, when he was sold and/or provided with alcoholic beverages by Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) members, officers, agents, and/or employees, **until he became intoxicated**.

71. That its members, officers, Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) and/or agents, sold or provided alcoholic beverages to Julien, **who was intoxicated**.

---

[17] *Id.* at 1950.

[18] *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570).

■■■■ Intoxication is central to the claim at hand.[19] The phrases in bold, reflected above, allege that Mr. Julien was "intoxicated" while being served at Island Blues. This allegation, if proven, could give rise to the imposition of "dram shop" liability on Defendant Island Blues, if such liability were found cognizable in the Virgin Islands. Undeniably, however, the term "intoxication" constitutes a legal conclusion. Scrutiny of the four corners of the pleadings, particularly Counts IV and V, discloses no factual basis from which to support the legal conclusion that Mr. Julien was intoxicated on February 28, 2006, when he was sold and/or provided alcoholic beverages at Island Blues Seaside Bar. Absolutely no mention is made regarding the number and/or type of drinks Mr. Julien consumed at Island Blues. Moreover, it is not alleged or suggested that anyone observed Mr. Julien with blood shot eyes; having slurred speech; being boisterous, argumentative, confrontational or hostile; appearing drowsy or disheveled; staggering, fighting, sleeping, reeking of alcohol on his breath or the like. The foregoing symptoms, although not necessarily exhaustive, are typically associated with an individual being inebriated. Because the phrases **"and while intoxicated," "until he became intoxicated,"** and **"who was intoxicated"** constitute legal conclusions, in accordance with *Fowler v. UPMC Shadyside*,[20] the Court must strike those terms and determine the sufficiency of the remaining factual allegations in Counts IV and V. Without the conclusory phrases, the relevant paragraphs read as follows:

> 58. Upon information and belief, at the same time, an individual named James H. Julien, immediately after consuming alcoholic beverages, was operating his 1989 Jeep Wrangler, (vehicle plate number JAE-299), in the parking lot described in detail above.

---

[19] *See* Richard Smith, *A Comparative Analysis of Dramshop Liability and a Proposal for Uniform Legislation*, 25 J. CORP. L. 553, 556 (2000). *See also* ARIZ. REV. STAT. ANN. § 4-311(A) (West 1995); ARK. CODE ANN. tit. 16, §§ 16-126-103, 104 (West 2006); CONN. GEN. STAT. ANN. § 30-102 (West 1990); GA. CODE ANN. § 51-1-40 (West 2011); IDAHO CODE § 23-808 (1995); IOWA CODE ANN. § 123.92 (West 2012); ME. REV. STAT. ANN. tit. 28-A, § 2506 (West 2012); MICH. COMP. LAWS § 436.1801 (1999); MO. ANN. STAT. § 537.053 (West 2012); N.J. STAT. ANN. §§ 2A:22A-1-7 (West 1987); N.M. STAT. ANN. § 41-11-1 (Michie 1989); OR. REV. STAT. §§ 471.565(2), 471.567 (West 2001); R.I. GEN. LAWS § 3-14-6 (West 1986); TENN. CODE ANN. §§ 57-10-101, 102 (West 2009).

[20] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

81

70. That upon information and belief, Julien was lawfully upon the aforementioned premises owned by Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) on February 28th, 2006, when he was sold and/or provided with alcoholic beverages by Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) members, officers, agents, and/or employees.

71. That Defendant Robert Ellis Brown, Inc. d/b/a Island Blues Seaside Bar (herein Island Blues Seaside Bar) its members, officers, and/or agents, sold or provided alcoholic beverages to Julien.

Stripped of these phrases, Plaintiff alleges only that Defendant Island Blues did exactly what it was licensed to do — serve alcohol to patrons. Without more, there is no "plausible claim for relief" as against Defendant Island Blues Seaside Bar.[21] Furthermore, even without striking the operative phrases, in order to make out a claim for "dram shop" liability paragraph 58 in Count IV is wholly dependent upon the viability of paragraphs 70 and 71 in Count V and does not of itself state a claim for relief.[22] Accordingly, the Plaintiff has failed to state a plausible claim in Counts IV and V against Defendant Island Blues upon which relief may be granted.

## B. Plaintiff's Claim Does Not Survive Scrutiny Under The Pleading Standard, Therefore This Court Need Not Determine Whether Common Law "Dram Shop" Liability Should be Recognized in the Virgin Islands.

Because the Plaintiff failed to state a plausible claim upon which relief may be granted as against Defendant Island Blues, this Court will not engage in a lengthy analysis of the national jurisprudential and legislative trends regarding "dram shop" liability. That issue will remain, for the time being, unanswered in the Territory.

---

[21] *Id.*

[22] "Dram shop" liability is not concerned with whether an individual was, or appeared, intoxicated at the time of an accident, but rather with whether the individual was, or appeared, intoxicated at the time he was served alcohol. *See* note 19, *supra.*

## IV. CONCLUSION

Plaintiff has failed to plead any facts to support the conclusion that Mr. Julien was intoxicated when Island Blues continued to serve him alcoholic beverages. Counts IV and V only describe Mr. Julien's condition while at or leaving Island Blues as being "intoxicated". "Intoxication" is a legal conclusion. Striking the term "intoxication" from Counts IV and V as instructed by *Twombly*, *Iqbal*, and *Fowler*, the Court is left with pleadings which are bereft of a plausible claim upon which relief may be granted against Defendant Island Blues. As such, Counts IV and V of the Second Amended Complaint must be dismissed against Defendant Island Blues pursuant to FED. R. CIV. P. 8(a)(2) and 12(b)(6) for failure to state a plausible claim upon for which relief may be granted.